Benefiel *et al. v.* Aughe *et al.*

Judgment reversed.

Filed Feb. 21, 1884.

No. 10,270.

## BENEFIEL ET AL. *v.* AUGHE ET AL.

PRACTICE.—*Objection to Decree.*—A general objection to a finding and decree in partition, which points out no reason for the objection, is not available.

SAME.—*Bill of Exceptions.*—*Evidence.*—A party excepting to the overruling of his motion for a new trial upon the evidence may avail himself of a bill of exceptions filed by his adversary, containing the evidence.

SAME.—*New Trial.*—*Written Reasons.*—That "the court admitted improper evidence" without specifying it, assigned as cause for a new trial, presents no question.

PARTITION.—*Appeal from Order of Sale.*—An appeal, in partition, lies from an interlocutory order demanding a sale of the lands.

EVIDENCE.—*Record of Deed.*—*Seal.*—A certified copy of a deed as recorded, showing the seal of the notary, who took its acknowledgment by an ink scrawl enclosing the letters "L. S." instead of an impression of the seal, is admissible as evidence.

COUNTY AUDITOR.—*Sale of Lands Mortgaged for Loan of School Funds.*—*Title.* —*Burden of Proof.*—If, in making sale of lands for non-payment of interest upon a loan of school funds, the auditor fails to obey strictly the requirements of the statute, the sale is void, and the party claiming title through the sale has the burden of showing such strict compliance.

From the Clinton Circuit Court.

*J. N. Sims, A. E. Paige, S. O. Bayless, S. H. Doyal* and *P. W. Gard,* for appellants.

*T. H. Palmer,* for appellees.

BICKNELL, C. C.—This was a suit by the appellees for

partition. Two of the defendants disclaimed. The other two, Benefiel and John C. Fisher, answered separately by general denial. The issues were tried by the court who found for the plaintiffs and rendered an interlocutory judgment that partition be made.

The defendants then made their first motion for a new trial, alleging, as reasons therefor, that " the finding and decision of the court were not sustained by sufficient evidence, and were contrary to law." This motion the court overruled and the defendants excepted, but they filed no bill of exceptions as to this ruling of the court, and no time was given them to file such bill.

Upon the announcement of the finding and interlocutory judgment the defendants " objected to the finding and decree." This objection was overruled by the court. To this ruling the defendants excepted, and this exception they saved by a bill of exceptions, which sets out the finding of the court, and proceeds thus: "To which said finding of the court the defendants then and there objected, which said objection was by the court overruled, to which said ruling the defendants then and there excepted."

Commissioners of partition were then appointed, who reported that the lands were indivisible. To this report the defendants made no objection.

The record states as follows: "Which report is by the court approved, and upon said report the court finds that said real estate is not susceptible of division without injury thereto, and that it ought to be sold."

The defendants then made a second motion for a new trial, alleging the following reasons therefor:

1. The decision and judgment of the court is not sustained by sufficient evidence.

2. The decision and judgment of the court is contrary to law.

3. The court admitted improper evidence on behalf of the plaintiffs.

4. The court allowed the plaintiffs, over the objection of the defendants, to read from a copy, certified by the recorder of Clinton county, of the record of the recorder's office of Clinton county, what purported to be a recorded copy of a deed from Elias M. Fisher and wife to the plaintiffs and others for the property in question.

This motion was overruled, and the defendant excepted to this ruling, but filed no bill of exceptions showing the evidence. The court then made an interlocutory order for the sale of the lands. From this order the defendants appealed, and obtained sixty days time to file bill of exceptions, but they did not file any bill of exceptions at any time afterwards.

The errors assigned are as follows:

1. Overruling the first motion for a new trial.

2. Overruling the second motion for a new trial.

3. Overruling the appellants' exceptions and objections, to the decree in favor of the appellees as per appellants' bill of exceptions, and in rendering such decree in favor of the appellees.

The third specification of this assignment of errors is supported by a bill of exceptions, which shows that the matter here complained of is the overruling of the following objection: "The defendants object to the finding and decree herein." Such an objection is too general to present any question. In *State* v. *Swarts*, 9 Ind. 221, there was an exception to the finding and judgment. The court said: "We know of no such practice, either under the old or the new system. The finding of the court stands precisely like the verdict of a jury." A general objection either to finding or verdict without stating why amounts to nothing. Buskirk Pr. 111.

The appellees claim that the appellants, by failing to file any bill of exceptions showing the evidence, have waived their oral exceptions to the overruling of their motions for a new trial, and stand in the same position as if they had failed to take any exceptions to such overrulings. They

claim that an exception to the overruling of the motion for a new trial, not perfected by a bill of exceptions, presents no question, and that a party, who has lost his position by failing to file a bill of exceptions, can not regain it by resorting to a bill of exceptions filed by his adversary. The record shows that the appellant filed no bill of exceptions showing the evidence, but that the appellee did file such a bill; the evidence being thus made part of the record is, we think, available for any party who has properly assigned errors or cross errors. See *White* v. *Allen*, 9 Ind. 561. It was decided in *Makepeace* v. *Davis*, 27 Ind. 352, that a party who had excepted and had taken leave to file a bill of exceptions, and had afterwards expressly waived such leave, could not, in reference to that matter, avail himself on appeal of a bill of exceptions filed by a co-defendant, but there was no such waiver in this case.

As to the first error assigned the court did not err in overruling the appellants' first motion for a new trial; but even if the ruling complained of were erroneous, it could have done no harm, because all the reasons presented for a new trial on the first motion are included among the reasons presented in support of the second motion for a new trial.

The second specification of error complains of the overruling of the second motion for a new trial. The first and second of the reasons for a new trial are, that the decision and judgment of the court are not sustained by sufficient evidence and are contrary to law. In such reasons the word "decision" is regarded as synonymous with "finding." *Weston* v. *Johnson*, 48 Ind. 1. And the defendants had a right to appeal from the interlocutory order of sale. *Hunter* v. *Miller*, 17 Ind. 88; *Davis* v. *Davis*, 36 Ind. 160.

The first and second reasons for a new trial will be further considered hereafter.

The third reason for a new trial, alleging the "admission of improper evidence," without specification, presents no question. *Meek* v. *Keene*, 47 Ind. 77.

Benefiel *et al. v.* Aughe *et al.*

The fourth reason for a new trial alleges error in "permitting the plaintiff to read from a copy, certified by the recorder of Clinton county, of the record of the recorder's office of Clinton county, what purported to be a recorded copy of a deed from Elias M. Fisher and wife to the plaintiff and others for the property in question."

The objection made to the introduction of this deed was as follows, as shown by the bill of exceptions:

"The certified copy offered in evidence bore no impression whatever of the official seal of the officer purporting to have taken and certified the acknowledgment of such deed, but in place of such impression of such seal had only attached to the certificate of acknowledgment the ink scrawl surrounding the letters L. S. thus [L. S.], and there was no other evidence that such ink scrawl and letters constituted a copy of the impression of the official seal of such officer. For which reason and for the further reason, as the defendants maintained, that such certificate of acknowledgment showed, on its face, that such officer was only authorized to take acknowledgments of deeds in and for Bedford county, Pennsylvania. The defendants objected to the introduction of such certified copy at the time it was offered, which objections the court overruled.

The certified copy showed that the deed was executed in the presence of two witnesses, and was dated October 19th, 1864, and the acknowledgment and certificates were as follows:

"STATE OF PENNSYLVANIA, BEDFORD COUNTY, SS:

"Before me, recorder of said county, authorized to take acknowledgments of deeds, in and for said county, this 19th day of October, A. D. 1864, personally came Elias Fisher and Kate Fisher, his wife, and acknowledged the execution of the annexed deed.

"Witness my hand and official seal.

[L. S.]                                  "O. E. SHANNON, Recorder.

"I hereby certify that the deed, of which the foregoing is

a true copy, was duly stamped as provided by act of Congress, and recorded November 10th, 1864, at 2 P. M.

"JOHN Q. A. YONKEY, R. C. C.

"By R. SIMS, Deputy.

"THE STATE OF INDIANA, CLINTON COUNTY, SS.:

"I, John P. Dearth, recorder within and for the county of Clinton and State of Indiana, do hereby certify that the annexed copy of deed described therein is a true and literal exemplification of the record as appears of record in record of deeds number 26, in pages number 346 and 347, the records of Clinton county, Indiana.

"Witness my hand and official seal this 31st day of May, A. D. 1881.

[L. S.]                    "JOHN P. DEARTH, Recorder,

"Clinton County, Indiana."

The certificate of acknowledgment states that the officer is authorized to take the acknowledgment of deeds, and it purports to bear the officer's official seal. The presumption is, in such a case, in the absence of evidence to the contrary, that the recorder of Clinton county did his duty (*Thompson* v. *Doty*, 72 Ind. 336), and that the certificate of the recorder of Bedford county bore his official seal, and it was not necessary in such a case that the recorder of Clinton county should impress on his record a *fac simile* of the seal of the recorder of Bedford county, Pennsylvania; nor that his certified copy of the record should "bear an impression of such official seal of the recorder of Bedford county." The letters L. S., in a scrawl, thus, [L. S.], are a sufficient representation of such official seal both in the record and in the certificate of the copy thereof. The other objection, to wit, that the certificate of the Bedford county recorder showed on its face that he was only authorized to take acknowledgments of deeds in and for said county, is equally unavailing. The statutes in force at the time were the act of 1859, R. S. 1881, section 2933, which is as follows: "To entitle any conveyance, mortgage, or instrument of writing to be recorded, it shall be acknowledged

by the grantor, * * * before any judge or clerk of a court of record, justice of the peace, auditor, recorder, notary public, or mayor of a city in this or any other State," and R. S. 1881, section 2935, previously enacted, which provides that, " To entitle to record, in this State, conveyances acknowledged out of this State and within the United States, the same must be certified by the clerk of any court of record of the county in which the officer receiving the acknowledgment resides, and attested by the seal of said court; but an acknowledgment before an officer having an official seal, attested by his official seal, shall be sufficient without such certificate."

The fourth reason for a new trial can not be sustained.

It remains to consider the first and second reasons for a new trial, which alleged that the verdict was not sustained by sufficient evidence, and is contrary to law.

The plaintiffs proved a title in themselves. The defendants undertook to show title under a sale by the auditor of the county by virtue of a school fund mortgage.

The mortgage and the note secured thereby were dated August 21st, 1855, and were in the form provided by law, the same form still required, except that the mortgage does not state the fund to which the same belongs. See R. S. 1881, sections 4385, 4386.

The note empowered the county auditor, in default of payment of principal and interest, to sell the mortgaged premises for the payment of principal, interest and costs.

The date of the sale was March 24th, 1873; the law prescribed the duties of the auditor in reference to such a power of sale; it required certain notices to be given, and gave specific directions as to the manner of sale.

Such a sale is not a sale under a judgment, decree or judicial proceeding. *Bonnell* v. *Ray*, 71 Ind. 141. It is a sale under a naked power, not coupled with an interest, and the auditor was bound to a strict observance of the requirements of the statute regulating such sales. If there was a failure to pursue the statutory authority there was no valid sale.

This has always been the law in Indiana. *Williamson* v. *Doe*, 7 Blackf. 12; *Skelton* v. *Bliss*, 7 Ind. 77; *Key* v. *Ostrander*, 29 Ind. 1; *Betson* v. *State, ex rel.*, 47 Ind. 54; *Arnold* v. *Gaff*, 58 Ind. 543; *Ferris* v. *Cravens*, 65 Ind. 262; *Brown* v. *Ogg*, 85 Ind. 234. Such a sale, omitting the statutory requisitions, is nugatory not only as to the purchaser, but as to his vendees. In *Vail* v. *McKernan*, 21 Ind. 421, this court said: "In this class of cases, it is not a question of good faith, but of power and conformity to prescribed modes of action. And the purchaser buys at his peril. This is the law which persons are bound to take notice of. Hence, persons intending to purchase, may be presumed to examine into the facts. * * Irregularities would be presumed to operate injuriously upon the sale, as intended bidders, knowing the effect of them, would be deterred from bidding. * The State acquired no title by her alleged purchase, and, of course, could transfer none." In the case just cited the defect was selling for more than was due.

The burden lies upon the party who claims title under such a sale to show that the statutory authority has been pursued. *Bonnell* v. *Ray, supra; Ward* v. *Montgomery*, 57 Ind. 276; *Steeple* v. *Downing*, 60 Ind. 478; *Smith* v. *Kyler*, 74 Ind. 575.

The evidence, to show the regularity and validity of the sale now under consideration, was deficient in several particulars. It did not appear that the county treasurer made a statement of the sale, nor that any such statement was signed by the auditor and treasurer and recorded in the auditor's office and afterwards filed in the treasurer's office. All of these acts were required by the statute, R. S. 1881, section 4396; and in *Arnold* v. *Gaff, supra*, this court decided that these acts were necessary to the validity of the sale; the court cited *Smith* v. *Provin*, 4 Allen, 516, and *Roarty* v. *Mitchell*, 7 Gray, 243, to the effect that where the mortgage conferring a power of sale requires an affidavit to be made and recorded, the omission to record the affidavit avoids the sale.

It was proved that the auditor in making the sale did not follow the provisions of R. S. 1881, section 4392, which are

Benefiel *et al. v.* Aughe *et al.*

these : "At such sale (which shall be held at the court-house door), the auditor shall sell so much of the mortgaged premises to the highest bidder, for cash, as will pay the amount due for principal, interest, damages, and costs. When less than the whole tract mortgaged, shall be sold, the quantity sold shall be taken in a square form, as nearly as possible, off the northwesterly corner of said tract; and when less than the whole of any in-lot or out-lot of any town or city shall be sold, the part sold shall be laid out and taken off, so that it shall extend from the main or principal street or alley on which the said lot fronts, to the rear thereof, to divide the same by a line as nearly parallel with the boundaries of said lot as practicable; and if less than the whole is sold, the auditor, in his notice of sale, shall indicate off of which side or end of said lot the part to be sold shall be taken; and if more than one tract of land is included in the mortgaged premises, the auditor shall elect which tract or tracts shall be sold, saving to the mortgagor, if practicable, the tract on which his house is located. If a tract of land so mortgaged, and liable to be sold to satisfy the mortgage, can not be divided without materially diminishing the value of such tract; or if any in-lot or out-lot be indivisible, by reason of extensive buildings or other improvements thereon, the auditor may sell the whole thereof, and after paying the amount due for principal, interest, damages, and costs out of the purchase-money, shall pay the balance, if any, to the mortgagor; and if the auditor sell any part of a tract of land, out-lot, or in-lot for more than the amount of principal, interest, damages, and costs, the excess, if any, shall be paid to the mortgagor."

The mortgaged premises included four separate tracts. It was proved that the auditor did elect which tract should be first sold so as to save to the mortgagor, if practicable, the tract on which his house was. It was proved that the auditor did not offer to sell any of the tracts separately, nor any part of any one of the tracts, but offered for sale a quantity out of the northwest corner of the four tracts taken together

as an entirety, and failing to get a bid sold all four of the tracts at once to Milroy, for nearly five times the amount due, and for about one-third of their real value. The amount due was $268.41. In the case of separate tracts the statute, section 4392, *supra,* expressly requires the auditor to elect which tract shall be sold, and give notice accordingly, but the auditor did neither. His failure to do so might well deter persons from bidding at such an irregular sale.

The first tract mentioned in the mortgage was Block No. 2 in the town of Frankfort, seventeen rods square, bounded on the south by Ohio street, and on the west by Prairie street. The statute required the auditor, if he elected to sell this tract, to offer it as a whole, or, if he should offer part of it, that such part should be laid out and taken off so that it should extend from the main or principal street or alley on which said lot fronts to the rear thereof, to divide the same by a line as nearly parallel with the boundaries as practicable. It was proved that this was not done. The plain meaning of the statute is that several tracts shall not be offered at once and together until after an effort is made to sell them separately, and that so much only of the mortgaged premises shall be sold as will pay the amount due for principal, interest, damages and costs. The evidence shows that in these particulars the auditor did not comply with the requisitions of the statute.

The auditor himself testified as follows: " I did not offer part of either tract separately, nor did I offer either tract separately. I first offered said land in this way : ' Who will pay the sum due, $268.41, for the smallest number of acres to be taken out of the northwest corner of said lands,' and, receiving no bid, I then offered the entire four tracts, and Jacob Milroy bid $1,200 for said lands, and that being the highest and best bid the lands were sold to him."

Such a proceeding was a clear departure from the plain command of the statute, and such a sale conferred no title. See the cases hereinbefore cited. Where a party acts under

a power not coupled with an interest he must follow the power. The presumptions made in favor of judicial proceedings are not applicable, and whoever undertakes to show title by the execution of such a power will fail, unless he shows a compliance thereby with the statutory requisitions. The finding was not contrary to law, and was sustained by sufficient evidence. There is no error in the record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things affirmed, at the costs of the appellants.

Filed Feb. 20, 1884.