## First National Bank et al. *v.* Farmers and Merchants National Bank et al.

[No. 21,282. Filed May 26, 1908. Rehearing denied December 9, 1908.]

1. PARTIES. —*Appearances.—Defaults.—Presumptions.—Cross-Complaints.*—Appearances and defaults entered in a suit to foreclose a mortgage, wherein a cross-complaint was also filed, are presumed to refer to the original suit. p. 329.

2. PARTIES.— *Appearances.—Defaults.—Presumptions.—Cross-Complaints.*—Where defaults were taken and answers filed prior to the submission for trial of a cross-complaint, such defaults and answers are presumed to relate to such cross-complaint. p. 329.

3. JUDGMENT. — *Foreclosure.* — *Attachment Liens.* — *Priorities.*—A finding that the attaching creditors' cross-complaint, asserting a superior lien upon certain land, is true, together with a finding that cross-defendant bank's judgment is a lien but subordinate to the lien of such attachment creditors authorizes a deduction that the judgments of such creditors are severally a lien upon such land, and are all prior to the lien of such bank. p. 330.

4. APPEAL. — *Parties.* — *Trustees.* — *Capacity.* — *Presumptions.* — Where "Charles R. Wheeler, Trustee for" a certain bank was named as an appellant, and the proceedings showed that he was prosecuting in his trust capacity, it will be presumed that the appeal was taken in his trust capacity. p. 331.

5. SAME.—*Parties.—Trustees.—Beneficiaries.*—Where a bank and its trustee in a deed of trust executed for its benefit both appealed from an adverse decision, it will be assumed that but one interest is really involved. p. 331.

6. SAME.—*Trial.—Theory.*—The theory of the case adopted by the trial court will be adhered to on appeal. p. 331.

7. SAME.—*Parties.—Cross-Complaint.*—Where a bank and its trustee under a deed of trust executed for its benefit were treated as the real cross-complainants below, the cross-defendants interested in maintaining the judgment below should be made appellees and such bank and trustee were proper appellants in an appeal from a judgment adverse to them. p. 331.

8. PARTIES.—*Necessity of Process.—Cross-Complaints.—Foreclosure.—Trial.—Answer.*—Where a suit is filed to foreclose a mortgage and some of the defendants file cross-complaints, it is not necessary to serve process on the other defendants, but they should be ruled to answer. p. 332.

9. TRIAL.—*Cross-Complaints.—Failure to Answer.—Admissions.*—The failure of a defendant to file an answer to his codefendant's cross-complaint is not an admission of the allegations thereof against him. p. 332.

10. SAME.—*Failure to Make Issues.—Waiver.*—The making of an issue may be waived by going to trial without one, but the recital in the record: "Now come the parties," does not show such waiver, such entry being applicable only to the parties already appearing. p. 332.

11. APPEAL.—*Trial Without Issue.—Waiver.*—Where a party has not waived the making of an issue, a trial without such issue is erroneous; and it will not unnecessarily be assumed that parties not answering, or defaulted, were court for the purpose of a trial on the complaint filed. p. 332.

12. JUDGMENT.—*Default.—Cross-Complaint.—Parties.*—A judgment rendered on a cross-complaint in which the cross-complainant made his codefendants parties defendant, and they either defaulted, or no issues were made as to them, is not binding upon them. p. 332.

13. APPEAL.—*Judgment.—Parties.—Reference to Bill of Exceptions.*—The Supreme Court may look to the bill of exceptions to ascertain the real parties to a cross-complaint, in order to determine who are bound by the judgment rendered. p. 333.

14. JUDGMENT.—*Names.—Mistakes.—Appeal.*—Where a judgment names The Citizens State Bank, as The Citizens National Bank, and Frank R. Atkinson is named as a party in one cross-complaint, but the judgment shows Frank P. Atkinson as the party, and the middle initial is omitted from another name, such mistakes will be ascribed to misprisions of the clerk. p. 333.

15. APPEAL.—*Appellees.—Naming too Many.*—The naming of outside persons as appellees has no effect on the appeal. p. 333.

16. SAME.—*Process.—Return.—Mistake in Names.*—Where process was issued for The Citizens State Bank and the return showed service upon Citizens State Bank, the presumption is that the process was served upon the proper party. p. 334.

17. EVIDENCE.—*Agent's Admissions as to Past Transactions.*—The admissions of an agent as to past transactions are not admissible in an action against his principal though such agent was technically a trustee under the principal's deed of trust and a party to the suit thereon. p. 336.

18. APPEAL.—*Bills of Exceptions.—Filed by One Party.—Use of, by Coparty.*—A bill of exceptions filed by one party to a suit may be used, on appeal, by his coparty. p. 337.

19. SAME. — *Bills of Exceptions. — Omissions.—Evidence.*—Where the bill of exceptions shows that a transcript bearing the parenthetical words "here insert" at the places where pleadings were omitted therefrom was read in evidence, the presumption, on appeal, is that such transcript did not actually contain copies of such pleadings, and therefore the bill shows no omissions. p. 337.

20. ESTATES.—*Real.—Personal.—Title.—Pending Suits.—Transfer.—Effect.*—At the common law the rights of parties to an action involving the title to property could not be affected by the sale or transfer of such property while the action was pending. p. 338.

21. ATTACHMENT.—*Levy.—Notice.*—Where a levy is required in an action in attachment, notice is not imputed to third parties until the levy is made. p. 338.

22. ACTION.—*Lis Pendens.—Basis.*—The basis of the doctrine that persons are presumed to take notice of pending actions is the general convenience. p. 339.

23. STATUTES. — *Remedial. — Action. — Lis Pendens.*—The statute (§330 Burns 1908, §326 R. S. 1881), providing, among other

things, that a sheriff levying on any real estate by virtue of a writ of attachment shall file a notice thereof in the *lis pendens* record, being remedial, should be liberally construed. p. 339.

24. WORDS AND PHRASES.—*"Any."*—*Statutes.*—The word "any," as used in §330 Burns 1908, §326 R. S. 1881, providing that whenever any sheriff shall seize any real estate by virtue of "any" writ of attachment he shall file a *lis pendens* notice thereof, implies all, and is used in a universal sense. p. 340.

25. STATUTES. — *Construction.* — *Grammar.*—*Punctuation.*—Grammar and punctuation may be of controlling force in the construction of a statute, where the language of itself does not appear plain. p. 340.

26. SAME.—*Title.*—*Construction.*—*Attachment.*—*Lis Pendens.*—The title of the act of 1877 (Acts 1877 [s. s.], p. 54) reading: "An act to provide [for] giving notice of pending suits, attachments, levies and liens affecting real estate in certain cases," implies that such act did not cover all cases, the restrictions thereof to those cases affecting real estate only being a sufficient explanation of its application. p. 341.

27. SAME. — *Construction.* — *Attachment.*—*Notice.*—*Lis Pendens.*— The filing by the sheriff of a notice in the *lis pendens* record, under §330 Burns 1908, §326 R. S. 1881, is necessary, as construed with §956 Burns 1908, §922 R. S. 1881, providing that a writ of attachment shall become a lien from the time of its delivery the same as an execution, and §335 Burns 1908, §331 R. S. 1881, providing that until the *lis pendens* notice is filed, the seizure of real estate under attachment shall not constitute constructive notice of the pendency of a suit affecting same, to constitute constructive notice of the pendency of an action involving the title to the real estate in question. p. 341.

28. SAME.—*Construction.*—*Last Words.*—Where the legislative intent can be ascertained from the language of an enactment, the court is not obliged to follow the last words used. p. 342.

29. MORTGAGES.—*Deeds of Trust.*—*Executed Pendente Lite.*—*Lis Pendens.*—*Attachment.*—Where an owner executed a deed of trust to a *bona fide* purchaser for value without notice, the prior levy of an attachment on the real estate covered thereby will not affect such purchaser's superior rights, where notice of such levy was not filed in the proper *lis pendens* record. p. 342.

30. SAME.—*Provisions.*—*Mutual Agreements.*—*Presumption.*—The provisions of a deed of trust, since they are contained in a dispositive instrument, are presumed to constitute a mutual agreement. p. 343.

31. CONTRACTS. — *Considerations.* —*Notes.*—*Mortgages.*—*Extension of Time of Payment.*—A contract by a bank to grant a definite extension for the payment of overdue notes upon a promise that

the makers will pay the interest thereon quarterly in advance and secure the debt by mortgage, is supported by a valid consideration. pp. 343, 346.

32. CONTRACTS.—*Consideration.—Value.*—Where parties to a contract agree upon a consideration of indeterminate value, the courts will uphold the contract. p. 343.

33. MORTGAGES.—*Provisions in Favor of Mortgagee.—Election.*—Where a mortgage contained a provision for the payment of interest in advance, and a provision that the mortgagee, in case of a failure so to pay, might treat the whole debt as due and payable, the failure of the mortgagee to elect to treat such sum as due upon such failure to pay cannot be taken advantage of by the mortgagor. p. 343.

34. SAME.—*Provisions in Favor of Mortgagee.—Election.—Burden of Proof.*—Where a mortgagee bank is asserting rights which are the result of an election upon provisions in its favor in the mortgage in suit, the burden of showing that such election was not made is upon the mortgagee; and this is shown by a course of conduct upon the mortgagee's part inconsistent with such election. p. 344.

35. TRIAL.—*Burden of Proof.—Attachment.—Levy.—Notice.—Want of.*—Where a bank sues to foreclose its deed of trust upon certain real estate and shows a want of actual notice of attachment levies, the burden is upon the attaching creditors, who claim superior rights, to prove that such bank had constructive notice of such levies. p. 344.

36. NOTICE. — *Liens.—Attachment Levy.—Insolvency.—Evidence.*—Evidence showing that a mortgagee bank accepted new notes secured by a deed of trust for overdue notes, knowing that the debtors were financially embarrassed, is not sufficient to charge the bank with constructive notice of an attachment levy, where the sheriff had failed to file a notice thereof in the *lis pendens* record. p. 344.

37. BANKS AND BANKING.—*Loans.—Security.—Diligence in Obtaining.—Exclusion of Others.*—A bank has a legal right to be diligent in obtaining security for its loans, and if other creditors are thereby excluded from obtaining security for their loans, there is no legal redress. p. 345.

38. APPEAL.—*Weighing Uncontradicted Evidence.*—Where the evidence is uncontradicted, the court will weigh it, even in favor of a recovery by the plaintiff. p. 345.

39. CONTRACTS. — *Consideration. — Mortgages.—Securing Overdue Paper.*—The mere execution of a mortgage to secure overdue paper does not constitute the mortgagee a *bona fide* incumbrancer, but if a valuable consideration was yielded by the mortgagee, such incumbrance is *bona fide.* p. 345.

40. MORTGAGES.—*Extension of Time for Payment.*—*Covenant Not to Sue.*—*Action.*—Where a mortgagee agrees in consideration of the payment of interest in advance to grant to the mortgagor a definite extension of time for the payment of the mortgage, a breach of such contract by the mortgagee's filing of a suit for foreclosure gives the mortgagor a right of action as for a breach of covenant.  p. 346. ·

41. ATTACHMENT.—*Lien of.*—*Rights.*—*Statutes.*—The rights of attachment creditors, being founded upon statutes, are measured thereby.  p. 347.

42. MORTGAGES.—*Priority.*—*Attachment.*—*Levy.*—*Lis Pendens Notice.*—Where attaching creditors levy upon real estate, but the sheriff fails to file a notice thereof in the *lis pendens* record, they are estopped from questioning the consideration for a mortgage afterwards given by the owner where the mortgagee yielded a valuable consideration therefor.  p. 348.

From Starke Circuit Court; *George Burson,* Special Judge.

Cross-complaint by the First National Bank of Peoria, Illinois, and another, against the Farmers and Merchants National Bank of Wabash, Indiana, and others.  From a decree denying part of the relief prayed, cross-complainants appeal.  Transferred from Appellate Court under cl. 2, §1394 Burns 1908, Acts 1901, p. 565, §10.  *Reversed.*

*Robert W. McBride, Charles H. Peters, Robert D. Peters* and *Frank L. Dukes,* for appellants.

*Harry R. Robbins, W. C. Pentecost, L. D. Boyd, George W. Julien* and *Sayre & Hunter,* for appellees.

GILLETT, C. J.—This suit is the outgrowth of one brought by the Burlington Savings Bank of Burlington, Vermont, to foreclose a mortgage on certain real estate in Starke county.  Three cross-complaints were filed.  The first was filed by certain creditors who had recovered a judgment in attachment in Pulaski county against the owner of the equity of redemption, in which action a writ of attachment had been levied on said lands while the action was pending in Starke county.  It is sought by said cross-complaint to have said judgment declared a senior lien on said real estate as

against all other interests and liens. The second cross-complaint was filed by Seth W. Freeman to foreclose a trust deed on said lands, and the third cross-complaint, under which appellants claim, was to establish as a senior lien on said lands, as against all other interests and liens, a trust deed executed to Charles R. Wheeler, as trustee. Process issued on the original complaint, and, after the filing of the first cross-complaint, the record shows that the original plaintiff filed answer to said cross-complaint.

1. The record then shows a default as to certain defendants, and that all defendants not defaulted appeared and filed answers. The answers (except of the plaintiff) are not on file, and we construe said defaults and the appearances and other answers as relating to the original action. A submission was entered, and a decree foreclosing the plaintiffs' mortgage followed. This decree was entered ''without prejudice to the interest of the complainant Charles R. Wheeler and the First National Bank of Peoria, Illinois, to file answer by cross-complaint'' by the first day of the next term of court. On said day Seth W. Freeman filed his cross-complaint, and subsequently, after defaulting certain defendants thereto and other defendants filing answers,

2. which defaults and answers we construe as relating to said second cross-complaint, the latter cause was submitted, and the plaintiff therein obtained a decree of foreclosure. After this foreclosure, and after a number of entries resetting the case for trial, the record states: ''Now again come the parties by counsel, and the defendant First National Bank of Peoria, Illinois, files answer to the cross-complaint in these words, to wit.'' The answer which follows states that ''comes now the defendant in the above-entitled suit, Charles R. Wheeler, trustee for the First National Bank of Peoria, and for answer to the cross-complaint of its co-defendant, the Farmers & Merchants National Bank of Wabash, Indiana,'' and other mentioned defendants, says, etc. Then follows an entry that ''said defendant also files cross-

complaint herein making all codefendants defendants hereto, in these words, to wit." It is not stated in the body of this complaint who files it, although from some of its averments it would appear that Charles R. Wheeler, trustee, was the plaintiff. An answer of general denial was filed by parties who claim under said attachment judgment, and it is then recited that "this cause, being at issue as to the priority of liens, by agreement is submitted to the court for trial." There is a general finding that all of the allegations of the cross-complaint of the attaching creditors are true, and the particular facts concerning the proceedings in attachment and the Pulaski county judgment are then set forth, including the name of the defendant (a defendant below), the date that said judgment became a lien, and there is also a finding for the First National Bank of Peoria, Illinois, that its judgment is a lien, but is subsequent and junior to the judgment liens of the attachment creditors. The record states that "the cross-complainants, the First National Bank of Peoria and Charles R. Wheeler, trustee, object and except" to the finding. The most that we can deduce from the judgment proper is that the described judgments of said attaching creditors are liens on certain real estate, and are prior and superior liens to the mortgage of the "First National Bank of Peoria, Illinois," which is described as to date, etc., and that said mortgage is a lien on the lands therein described, but is a subsequent and junior lien to the judgments in attachment. A motion for a new trial was filed by "the cross-complainant First National Bank of Peoria, Illinois, Charles R. Wheeler, trustee in the above entitled cause," assigning, among other causes: (1) That the decision of the court is not sustained by sufficient evidence, and (3) that the decision of the court is contrary to law. The bill of exceptions, which was afterwards filed, recites that "the cause being at issue is submitted for trial upon the issues joined." There is in the rec-

ord an admission, hereinafter more particularly referred to, to the effect that the trust deed "was issued to the cross-complainants," and, so far as we have perceived, the whole controversy upon the trial related to the question of priority as between said mortgage and said attachment.

The pleadings and record were very carelessly prepared in the court below, and, as the questions thereby presented for the most part relate to our jurisdiction, we have been prompted to examine the transcript critically.

Error is assigned by the First National Bank of Peoria, Illinois, and Charles R. Wheeler, trustee for the First National Bank of Peoria, Illinois. The proceedings sufficiently show that the latter was actively prosecuting in his capacity as a trustee, and therefore it will be assumed that it is in his trust, rather than in his personal, capacity, that he describes himself as appellant. *Beers* v. *Shannon* (1878), 73 N. Y. 292; *Hallett* v. *Harrower* (1860), 33 Barb. 537. It may also be suggested that these appellants, although two in number, really represent but one interest, that of said bank.

It is argued that certain parties defendant who were defaulted, among them the owner of the equity of redemption and one of the makers of the mortgage under which appellants claim, should have been made parties appellant. We have set out enough of the record to show that the cause was tried on the theory that said Illinois bank and Charles R. Wheeler, trustee, were the cross-complainants in the cross-complaint filed on the bank's behalf, and to this theory the parties will be held on appeal. *Jones* v. *Thompson* (1859), 12 Cal. 191. This being the theory below, said cross-complainants were not only properly joined as appellants, but the fact that it may be thus assumed that they had filed the cross-complaint, which was in a sense an original action, changed the general rule as to the making of coparties, and it was

sufficient to make all other parties appellees, who were interested in maintaining the judgment or who had a standing to appeal therefrom. See Elliott, App. Proc., §156.

The question arises whether certain persons who were defendants to the original suit or parties in some capacity to some of the cross-complaints, and are not parties here, should have been made appellees. Since it was sought in the original suit to procure a decretal order for the sale of the equity of redemption, the question of the adjustment of the rights of parties to the record having interests in the mortgaged premises was so involved that further process was not necessary to authorize such adjustment upon the filing of cross-complaints. *Clements* v. *Davis* (1900), 155 Ind. 624. It does not, however, follow from this premise that such persons are parties to the judgment appealed from. Although technically in court, they ought to have been ruled to answer. *Buchanan* v. *Berkshire Life Ins. Co.* (1884), 96 Ind. 510. The failure to answer was not an admission of the allegations against them (*Purple* v. *Farrington* [1889], 119 Ind. 164, 4 L. R. A. 535), and while it is true that the making of an issue might be waived by going to trial without one, yet to this end it ought to have been shown that there was such an appearance subsequently as to authorize the conclusion that there was a waiver. The usual entry by the clerk, "now come the parties," etc., presumably relates to parties already appearing. See *Fee* v. *State, ex rel.* (1881), 74 Ind. 66; 2 Ency. Pl. and Pr., 600. As a trial without an issue, where not waived, would be at least erroneous, it will not unnecessarily be assumed that parties not answering a cross-complaint or defaulted for a failure to do so were in court for the purposes of a trial on such complaint. Apart from this, however, we think it must be affirmed that the judgment in question settled only questions as between appellants and the attaching creditors. It does not in terms declare for or against

the right of any one else, and the prior entry, wherein it is recited that the cause being at issue as to the priority of liens, is submitted, etc., shows that the contest related to a matter wherein issues had been framed. This is made even more apparent by the bill of exceptions. It is true that the original plaintiff, the Burlington Savings Bank of Burlington, Vermont, joined issue on the first cross-complaint, but it has been made an appellee, and has joined in error, and presumably has obtained such relief. as it sought in its prior decree of foreclosure. In these circumstances we think. that the only question of jurisdiction remaining open is whether all of the attaching creditors are made appellees and are in court. The assignment of errors names as appellees, among others, the Farmers & Merchants National Bank of Wabash, Indiana, the First National Bank of Wabash, Indiana, The Citizens State Bank of Huntington, Indiana, John M. Curtner, Thomas F. Payne, Abner T. Bowen, Joseph E. Ruffing, John D. Wilson, Frank P. Atkinson, John T. Gee, Joseph Been, William J. Atkinson, William M. Atkinson and Cornelius J. McGreevy. This follows the names of the attaching creditors as set out in the judgment proper, except that the Citizens State Bank of Huntington, Indiana, apparently by the misprision of the clerk, is there named as "The Citizens National Bank of Huntington, Indiana," and that William J. Atkinson is therein named without any middle initial. There was a Frank R. Atkinson named as a cross-complainant in the cross-complaint of said attaching creditors, but, in view of the judgment, we conclude that this was a misnomer. We therefore perceive no defect of parties appellee. Making too many appellees does not afford ground of objection.

A brief has been filed on behalf of the Wabash banks and Curtner and Payne, and a further brief has been filed on behalf of the firm of Abner T. Bowen & Co., which firm seems to include all of the remaining attaching creditors ex-

cept the Huntington bank. There is a return of service upon Citizens State Bank of Huntington, Indiana, which we assume is The Citizens State Bank of Huntington, Indiana. It therefore appears, so far as we perceive, that jurisdiction of this appeal exists, and we therefore proceed to its disposition.

The evidence shows that the attaching creditors claim under a judgment in attachment of the Pulaski Circuit Court rendered May 9, 1904. The action originated in Starke county, and prior to the change of venue an attachment had been levied on lands in said county belonging to Charles A. Jamison. An admission shows that the sheriff's notice of *lis pendens* was filed and recorded February 20, 1904. On December 12, 1903, said Jamison and wife executed to Charles R. Wheeler and his successors in trust a trust deed or mortgage (subject to liens already of record) covering all or a part of the lands levied on under said writ. The mortgage sets out the existence of an indebtedness, evidenced by overdue notes (with one possible exception, in which the note was payable on demand), in an amount approximating $64,500. According to the recitals of the mortgage, all of said notes, with one exception, were signed by C. A. Jamison and A. W. Jamison. The remaining note, according to the mortgage, was signed by C. A. Jamison. The mortgage recites that "the consideration for the making of this deed of trust is the notes aforesaid, and an agreement upon the part of said First National Bank of Peoria to extend the time for the payment of said several notes for a period of one year from the maturity of them severally, with an agreement on the part of the makers of said notes to pay the interest thereon, during said period of extension, quarterly in advance." Provision was made that in case of default in the payment of the several promissory notes, at the time and in the manner stipulated in the mortgage, or of any part of said notes or of the interest thereon as in said mortgage stipulated, the whole principal sum

and interest should thereupon, at the option of the legal holder or holders of the notes, become due and payable, and that there should be authority to foreclose, etc., in that event. There is an admission of record "that the mortgage or trust deed was issued to the cross-complainants by the defendants Jamison and Jamison, for a *bona fide* indebtedness on December 12, 1903; that the mortgage was recorded in Starke county, Indiana, on January 8, 1904, at 11 o'clock a. m.; that the mortgage was duly and legally executed and properly acknowledged."

It appears from the testimony of Wheeler, the trustee, who was vice-president and a director of the First National Bank of Peoria, Illinois, and who seemingly conducted the transaction by which the mortgage was taken, that it was given for additional security; that he had no notice or knowledge of attachment proceedings in the Starke Circuit Court, affecting the land described in the mortgage, until after January 8, 1904; that, from what Jamison said, he supposed there was a good title to the land; that he simply took the statement of Jamison, and made no inquiry in the clerk's office or sheriff's office of Starke county; that he knew that a portion of the land was mortgaged, and he did not suppose that he was getting a first mortgage; that Jamison made a general statement of his indebtedness, but he said nothing about the attachments, and did not mention some of his mortgages or certain of the debts he owed. There was further evidence which, to give it the strongest construction in favor of appellees, may be said to show that Wheeler's knowledge of Jamison's circumstances was such as fairly to lead Wheeler to believe that a crisis had been reached in Jamison's financial affairs, and that if he was not already insolvent he soon would be.

Mr. Hunter, who represented certain of said attachment creditors, testified to a conversation he had with Wheeler in 1905, relative to an adjustment. The witness detailed at length matters that were talked over relative to Jamison's

circumstances at and prior to the making of the mortgage, but, aside from the light, if any, that Hunter's evidence threw on that subject, it may be said that the only statement of his testimony which it might be claimed has any significance was to the effect that in the course of the conversation the witness made some reference to their attachment suit in Starke county, and to the levy on all of Jamison's real and personal property, a fact which it was suggested to Wheeler that he knew, to which he responded: "Yes, and when we took our trust deed we thought we were getting a good title, and would only be subject to judgments of record." At the outset of Wheeler's testimony there appears to be some conflict between him and Hunter as to whether the attachments were talked about, Wheeler claiming that the talk was about the judgments. On cross-examination, however, the witness admitted that there might have been some talk about the levy of the attachment and of the attaching creditors' having priority, but he denied the statement attributed to him by Hunter.

We do not think that Hunter's testimony went far enough to amount to evidence of an admission upon the part of Wheeler that he had notice or knowledge of the existence of the attachment lien when the mortgage was taken, and we may further add that, as an agent, he was not empowered to admit the rights of his principal away by his references to a past transaction. *Blair-Baker Horse Co.* v. *First Nat. Bank* (1905), 164 Ind. 77. Professor Greenleaf says that the declaration of an agent, to bind his principal, must be made "during the continuance of the agency in regard to a transaction then depending *et dum fervet opus.*" 1 Greenleaf, Evidence, §113. In *Union Packet Co.* v. *Clough* (1874), 20 Wall. 528, 22 L. Ed. 406, the Supreme Court of the United States said: "A close attention to this rule, which is of universal acceptance, will solve almost every difficulty. But an act done by an agent

First Nat. Bank *v.* Farmers, etc., Bank—171 Ind. 323.

cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation, or an isolated act done at a later period. The reason is that the agent to do the act is not authorized to narrate what he has done, or how he has done it, and his declaration is no part of the *res gestae.''* We may further add that, in our opinion, Wheeler was not authorized to make an admission of a past transaction, although he was a trustee under the deed of trust and a party to this action. As a trustee he had but a technical interest; the real and beneficial interest was in the bank which he represented, and the courts of this country having broken away from the idea that a trustee is to be treated as an owner, it is our view that his naked admissions ought not to be received in derogation of the trust which he represents. 1 Elliott, Evidence, §662; *Graham* v. *Lockhart* (1845), 8 Ala. 9; *Thompson* v. *Drake* (1858), 32 Ala. 99; *Fargason* v. *Edrington* (1887), 49 Ark. 207, 4 S. W. 763; *Sargeant* v. *Sargeant* (1846), 18 Vt. 371; *Eitelgeorge* v. *Mutual, etc., Assn.* (1878), 69 Mo. 52.

Two objections are made to our consideration of the testimony as set out in the bill of exceptions: (1) That Wheeler, trustee, has not filed a bill of exceptions, and (2) that the evidence should not be regarded as in the record, because certain pleadings and papers claimed to be embraced in a transcript of the proceedings of the Pulaski Circuit Court are set out by a mere ''insert.'' To these propositions we make answer: (1) That as it has been held that a party may take advantage of his adversary's bill of exceptions (*Benefiel* v. *Aughe* [1884], 93 Ind. 401), there certainly can be no objection to a coäppellant's manifesting the fact of error by a bill of exceptions filed by his coparty; (2) that, as it may fairly be assumed that the transcript read in evidence did not in fact contain the original pleadings and papers, there is

nothing to contradict the certificate of the judge that the bill contains all the evidence given in the cause.

The leading question in the case is whether, in view of the fact that the writ of attachment was levied while the attachment proceeding was pending in Starke county, where the lands were situate, it was the duty of the attaching creditors, by reason of the provisions of section seventy-four of the code (§330 Burns 1908, §326 R. S. 1881), to have the sheriff file a notice of the levy in the *lis pendens* record. The section in question (punctuated as it appears in the acts of 1881 and in the enrolled act of that session) is as follows: "Whenever any sheriff or coroner of any county in this State, shall seize upon any real estate or interest therein, by virtue of any writ of attachment, or shall levy upon any such real estate or interest therein, by virtue of any execution issued to him from any court other than the court of the county in which he is sheriff or coroner, he shall, at the time of making the seizure or levy, file with the clerk of the circuit court of his county, a written notice, setting forth the names of the parties to the proceedings upon which the writ of attachment or execution is founded, and a description of the land seized or levied upon," etc.

Before considering the construction of the particular language of the foregoing section we may properly advert to some general principles which have a bearing upon the question. It was a rule of the common law, recognized as essential to the administration of justice, that the *status quo* of actions, which were being duly prosecuted, without collusion that directly affected the title to property, should not be disturbed by the intervention of a purchaser or incumbrancer. *Murray* v. *Ballou* (1815), 1 Johns. Ch. 565; 25 Cyc., 1449-1458; 21 Am. and Eng. Ency. Law (2d ed.), 594, 605. The same general principle underlies suits in attachment, although it is probably the law that where a levy is required the imputation of notice does not arise until the levy is made. The hardship

of the doctrine of *lis pendens* has been often noted, especially where the notice was constructive, but the rule was maintained on the ground that the general convenience required it. *Murray* v. *Ballou, supra*; 25 Cyc., 1452; Anderson's Law Dict., title, *Lis Pendens,* and authorities cited; note to *Stout* v. *Phillipi Mfg., etc., Co.* (1895), 56 Am. St. 843, 855. The idea of providing for a public record which should be notice to prospective purchasers of pending actions was suggested as early as the year 1685 (*Anonymous* [1685], 1 Vernon \*318), and after the enactment in the state of New York of a statute upon the subject, limited, however, to suits in equity, a number of states enacted notice of pendency statutes, applying for the most part to actions and suits concerning real property. Relative to these enactments it is said in 21 Am. and Eng. Ency. Law (2d ed.), 613: "The statutes are designed to remedy the hardship of the preëxisting law, which often operates unjustly, and the inconvenience of having to examine all suits pending in the several courts to ascertain whether any of them relate to or affect a particular tract of real estate."

The act of March 14, 1877 (Acts 1877 [s.s.], p. 54), relative to notice of *lis pendens,* formed the basis for the code provisions upon that subject in the acts of 1881 (Acts 1881, p. 240), and these enactments, although they have been broadened in some particulars since, evince a careful effort on the part of the General Assembly to make provision for the giving of notice of the pendency of actions concerning real estate in, so far as now occurs to us, practically every case affecting the title to real estate wherein other records of the county, with which a proposed purchaser is charged with constructive notice, such as deed, mortgage and judgment records, do not furnish the needed information of the right which is asserted. The legislation is evidently remedial, and considering the old law, the mischief, and the provisions of the section in controversy, it is evident that the statute should be broadly construed to make

the remedy effectual.   2 Lewis's Sutherland, Stat. Constr. (2d ed.), §583.

A comparison of §330, *supra*, with §325 R. S. 1881, Acts 1881, p. 240, §73, suggests no good reason which would have prompted the legislature to ameliorate the common law concerning *lis pendens* as applied to actions brought in the county where the real estate was situate, where the records did not charge the purchasers with constructive knowledge, while it still continued the old rule as to actions in attachment brought in the same county, since the latter proceeding might just as effectually destroy the purchaser's claim of title as the former.. We, therefore, approach the construction of the language of the section in question with the observation that the court should be disposed to construe it broadly to advance the remedy and in such a manner as to impute a consistent intent to the legislature.

We first observe that in referring to writs of attachment, a word of universality is used, since the statute refers to "any" writ of attachment. We next note that the section distinguishes between seizures by writs of attachment and levies by virtue of executions (see section seventy-nine of the code [§335 Burns 1908, §331 R. S. 1881], which also brings out this idea).   Following the word "attachment," as it first occurs in the section, is a comma.   The separation between what precedes and that which follows is further accentuated by the disjunctive "or."   Moreover, there is no comma after the word "execution," as it first occurs in the section, and therefore the words, "by virtue of any execution issued to him from any court other than the court of the county in which he is sheriff or coroner," are left as an entire phrase. As a matter of strict grammatical construction the descriptive words in the latter part of the phrase should, in the absence of punctuation, be referred to their last antecedent, "execution," and had the intent been, by means of punctua-

tion, to bring out a meaning which would refer these qualifying words to more than their immediate antecedent, a comma should have been inserted after said word. *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605, 622. Considerations of grammatical and rhetorical usage are not controlling where an intent in conflict therewith is disclosed, but they are not unimportant, and may influence a doubtful case, while in such a case as this, where there is nothing out of accord therewith, either in the particular language or in the general intent which broad considerations of the act disclose, they are of controlling force.

Counsel for appellees call attention to the title of the act of 1877 as evincing an intent in conflict with the view that a notice of *lis pendens* should be given of the institution of a proceeding in attachment commenced in the county where the lands are situate. The title is: "An act to provide [for] giving notice of pending suits, attachments, levies and liens affecting real estate in certain cases," and from this it is argued that the act was not intended to cover all cases. Manifestly not, and the fact that the act related solely to actions and proceedings affecting the title to real property or interests therein furnishes a sufficient explanation for the qualifying words of the title.

Again it is argued that the construction which we have indicated should be given to the statute brings it into conflict with §956 Burns 1908, §922 R. S. 1881, which provides that "an order of attachment binds the defendant's property in the county subject to execution, and becomes a lien thereon from the time of its delivery to the sheriff in the same manner as an execution," and it is argued, in the same connection, that property levied upon is in *custodia legis*. If counsel are correct in the contention that there is any conflict between the statutes referred to, they must be prepared to go further and concede

that the provision for notice, which they must necessarily admit applies to executions from other counties, is in conflict with the provisions of the code concerning executions from other counties, since §731 Burns 1908, §689 R. S. 1881, provides that "an execution against property issued to another county shall bind the real estate of the defendant from the time of the levy." It seems to us, however, that §335, *supra,* answers both of the suggested objections, since it is there provided that "until the proper notices required by this act have been filed with the proper clerk, the bringing of suits for the purposes mentioned in section seventy-three [§325], and the seizure of real estate under attachments, and the levy thereon under execution, in the cases mentioned in section seventy-four [§326] shall not operate as constructive notice of the pendency of such suits, or of the seizure of or levy upon such real estate, nor have any force or effect as against *bona fide* purchasers or incumbrancers of the same." This section limits the common-law doctrine concerning *lis pendens* (*Pennington* v. *Martin* [1897], 146 Ind. 635), and the last clause operates to annul as against *bona fide* purchasers and incumbrancers the effect of a seizure or levy where notice thereof is not given in the *lis pendens* record.

Where the intention can be ascertained from the language of an enactment, the court will not regard itself as bound to follow the words last used. *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180, 8 L. R. A. (N. S.) 1192.

Our conclusion is that if the First National Bank of Peoria, Illinois, is a *bona fide* incumbrancer, the levy of the attachment, while it may have been effectual for some purposes, was destitute of force against the bank.

Having held that said bank might, as against the levy of the attachment, acquire a paramount right, the question arises whether the evidence shows that it was a *bona fide* incumbrancer. There can be no doubt that the

provisions of the mortgage, since they are found in a dispositive writing, evidence a mutual agreement of the parties thereto. The stipulation was for a definite period of extension of what we may assume to be overdue paper, upon the consideration that the makers of the notes would pay the interest thereon quarterly in advance, and also upon an implied consideration that the mortgagors would by mortgage secure the payment of the debt. The bank's agreement constituted a new and sufficient consideration for the giving of the security. It cannot be successfully claimed that the fact that the interest was not at once paid in advance made any difference, for by the agreement the bank placed it in the power of the debtors, by the due execution of the contemporaneous agreement, to get the benefit of the bank's stipulation. With the execution of the mortgage and contemporaneous agreement, the situation of the parties changed, and, whether the owner of the land afterwards kept his covenant or not, it cannot be said that the bank had not yielded a consideration of value to procure the securing of the debt. This may be put upon the principle that where parties agree upon a consideration, and it is one of indeterminate value, the courts will not substitute their judgment for that of the contracting parties, but will uphold the contract. *Price* v. *Jones* (1886), 105 Ind. 543, 55 Am. Rep. 230; *Fleetwood* v. *Dorsey Mach. Co.* (1884), 95 Ind. 491; *Wolford* v. *Powers* (1882), 85 Ind. 294, 44 Am. Rep. 16.

Appellee's counsel make the point that the evidence does not show that A. W. Jamison, a comaker of a number of the notes, actually agreed to pay the interest in advance, as recited in the mortgage. If the contract was invalid for any reason growing out of the failure of A. W. Jamison to consent to the covenant to pay, it is evident that no one but the bank can take advantage of it, and as the mortgage executed appears valid upon its face,

and as it appears that the bank is asserting rights under it, we deem it clear that the burden is on those who would rely on the fruits of an election to treat the contract as invalid to show a course of conduct inconsistent with the asserted right. See *Talbot* v. *Talbot* (1861), 23 N. Y. 17; *Kain* v. *Rinker* (1891), 1 Ind. App. 86. Our conclusion is that the evidence *prima facie* established the fact that appellant bank was an incumbrancer for a valuable consideration.

The question next arises, on whom was the burden of proving a want of notice. It would seem that the evidence of Wheeler went about as far as could, in the circumstances, be reasonably expected to prove that there was no actual notice, and to require appellants to go further and prove that there was no constructive notice would be calling on them to prove an impossible negative.

Counsel for appellees urge that the circumstances shown by the evidence charged the mortgagee with constructive notice of the levy. We disagree with appellees' counsel as to the legal effect of the facts and circumstances shown by the evidence. They might, in many particulars, have been materially stronger than they were, and yet they would not have justified a finding in favor of the attaching creditors. As applied to this case, we think we may adopt the apt test suggested in *United States* v. *Detroit Timber, etc., Co.* (1904), 131 Fed. 668, 67 C. C. A. 1, that " 'what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell.' " Circumstances which are merely equivocal will not charge a purchaser or incumbrancer with the duty of making inquiry. 23 Am. and Eng. Ency. Law (2d ed.), 497. Mere knowledge of the grantor's insolvency has been held insufficient to this end in fraudulent conveyance cases. See 20 Cyc., 484; 14 Am. and Eng. Ency. Law (2d ed.), 291; *Sellers* v. *Hayes* (1904), 163 Ind. 422. It must

not be forgotten, that appellant bank, as a creditor, had a right, so far as the state laws were concerned, to be diligent in getting security. Merely outrunning other creditors was not a legal wrong, and, there being nothing further in the case than circumstances calculated to suggest that possibly other creditors had been active, too, we hold that the bank was not obliged to delay until, by the obtaining of an abstract or by other means, it could ascertain the condition of the title. By such a course it might have lost all opportunity to get security, and legal fairness to other creditors did not lay any such burden on its conscience that it might not on the facts set forth in the record, without inquiry, step into the place of the favored creditor.

Where the evidence in the record is all one way, its effect becomes a matter of law, and the court will weigh it, even in favor of the right of an appellant to recover. *Riley* v. *Boyer* (1881), 76 Ind. 152; Ewbank's Manual, §46. It appears to us that in this case error is well assigned.

Judgment reversed, and a new trial ordered.

## ON PETITION FOR REHEARING.

GILLETT, J.—In their brief in support of the petition of the appellees seeking a rehearing herein, counsel argue that there was no consideration for the execution of the mortgage, since, under the terms thereof, appellant bank was authorized, upon default in the payment in advance of interest according to the stipulation, to exercise the option to declare the whole sum immediately due and payable.

Granting, for the sake of the argument, that said appellant could, in the circumstances, have proceeded to collect its debt without delay after the execution of the mortgage, it does not follow that it was not a *bona fide* incumbrancer.

It is true that the mere receiving of the mortgage as a security for over-due paper was not sufficient to that end, yet if said appellant advanced any new consideration to procure the conveyance, it thereby became, so far as consideration was concerned, a *bona fide* incumbrancer. *Busenbarke* v. *Ramey* (1876), 53 Ind. 499; *Gilchrist* v. *Gough* (1878), 63 Ind. 576, 30 Am. Rep. 250. The question in such a case, to borrow from the language used in the leading case of *Bassett* v. *Nosworthy* (1673), Finch *102, "is not whether the consideration be adequate, but whether it be valuable."

Putting the strongest construction upon the language which provided for the exercise of the option to declare the debt due for nonpayment of the interest in advance, it nevertheless follows that appellant bank has yielded a consideration; for, although, as it turned out, said appellant may have become entitled to sue immediately after the execution of the mortgage, yet the contract relative to time had a basis for a legal operation, since, during the passing of the very interval or moment on which the claim of a default might have been predicated, said appellant had, by its agreement, put itself in a situation wherein the debtor was empowered, by the payment of the interest, at least to render said appellant liable in damages, should it bring an action, as on a covenant not to sue. See *Trayser* v. *Trustees, etc.* (1872), 39 Ind. 556; *Ayers* v. *Hamilton* (1892), 131 Ind. 98. It therefore follows that the provision for delay constituted a consideration, and, however strongly the idea might be enforced that the promise of delay and the promise to pay the interest were strictly mutual or dependent covenants, yet the giving of the former constituted a consideration for the mortgage, since, by the immediate performance of the condition, the debtor, by force of the contract, might have gained a benefit which he would not otherwise have been entitled to. Appellant bank was not bound to yield this privilege, and, having done so, it cannot be said that the mortgage is with-

First Nat. Bank *v.* Farmers, etc., Bank—171 Ind. 323.

out consideration. Indeed, it strikes us as a wholly unwarranted view that the matter of nonperformance by the debtor, upon whom performance was devolved, could in any case have anything to do with the question whether there was a consideration for a conditional promise which such party could have availed himself of, even within the shortest interval of time after the execution of the agreement. Speaking in the concrete, appellant bank, by accepting the mortgage, put it in the power of Jamison, by immediately paying the interest as stipulated, to make available to himself the covenant for delay, according to its legal effect, during the first three months.

In arguing the question, counsel seem to fail to distinguish between the concluding of the contract and the performance of its engagements. Appellant bank and Jamison were two different parties, and, the contract having been concluded, the former is not to be charged with the derelictions of the latter in respect to performance. Said appellant yielded a right in respect to the enforcement of the debt, and, having been granted an estate by way of mortgage in consideration thereof, the grant was not subject to be defeated by the failure of the debtor, over whom said appellant had no control, immediately to perform the condition upon which the right was granted.

On another ground it may be said that the proof was sufficient to show that appellant bank was in a situation to claim the rights of a *bona fide* incumbrancer. So far as the lien of an attachment is concerned, the plaintiff thereunder can be awarded no greater right than the statute gives him. See *Gimbel* v. *Stolte* (1877), 59 Ind. 446; *Houston* v. *Houston* (1879), 67 Ind. 276. By failing to give a notice of *lis pendens* the attachment creditors left the title in such condition that, by the provisions of the statute, the debtor had power effectively to mortgage the property to a *bona fide* incumbrancer, and thereby to displace the other liens. Having by such neglect left their

debtor with such power, it may be said that they are claiming under him in respect to the character of the transaction, and that if, as between appellant bank and Jamison, appellant yielded a consideration, such creditors cannot impeach the transaction on the ground of a want of consideration. It was declared in *Durland* v. *Pitcairn* (1875), 51 Ind. 426, that "it is an elementary rule, that he who prevents a thing being done shall not avail himself of the nonperformance he has occasioned." So it was said by Elliott, J., in *Elkhart Car Works Co.* v. *Ellis* (1888), 113 Ind. 215, that "it would be a flagrant violation of right to permit the grantor of an estate upon a condition subsequent to defeat the estate by wrongfully preventing the performance of the condition, and the law is not subject to the reproach of permitting such a thing to be done." The principle declared in the cases cited is applicable here. As the attachment creditors, by their neglect, left their debtor with power to convey under the law, it is clear that if a contract was made relative to an extension of time which was sufficient between the parties to constitute a new consideration, such creditors should be concluded, in the matter of consideration, by what concluded him, and that it is no answer for them to assert that, after the making of the mortgage, which rested upon a sufficient consideration, he turned his back upon the transaction and walked away.

We have carefully considered all of the grounds on which a rehearing is sought, and are of opinion that the petition therefor should be overruled. It is so ordered.