No. 15,603.

## BRYAN ET AL. *v.* WATSON.

SUNDAY LAW.—*Subscriptions to Church.*— *Work of Charity.*—A subscription made on Sunday, to liquidate an indebtedness of a church contracted in the erection of a building to be used as a place of worship, is not "common labor" within the inhibition of the statute (section 2000, R. S. 1881), but is a work of charity, and is valid and binding. *Catlett* v. *Trustees, etc.,* 62 Ind. 365, overruled.

From the Marion Superior Court.

*A. F. Denny,* for appellants.

*S. M. Shepard,* for appellee.

BERKSHIRE, J.—The appellants are the trustees of the South Street Baptist Church, in the city of Indianapolis. This action was brought to enforce a subscription made by the appellant for the benefit of said church society.

When the appellee made the subscription here in question he was a member of the said society.

The complaint is in two paragraphs, one counting on a verbal, and the other on a written subscription.

The object of the subscription, as alleged in the complaint, was to liquidate an indebtedness of said church contracted in the erection of a building to be used as a place of worship.

At the time the appellee made his subscription other persons also made subscriptions, and upon the faith of the subscription made by the appellee paid the amounts subscribed by them.

After the cause was put at issue there was a jury trial, and by direction of the court, a verdict returned for the appellee, and upon the verdict he recovered judgment.

Counsel for the appellants rests his case upon two propositions, which relieves us from considering other questions presented by the record. These two propositions are: (1). That a subscription to aid a religious society, made on Sunday, is valid and binding; and (2), if not valid in the begin-

ning the taint may be wiped out by ratification on a secular day.

·The conclusion to which we have arrived, as to the first proposition, makes it unnecessary that we consider the second.

The subscription rests upon a valuable consideration, and may be enforced as an executory contract, unless the transaction of which it is the outgrowth is one which section 2000, R. S. 1881, denounces. *North-Western, etc., Conference* v. *Myers,* 36 Ind. 375; *Higert* v. *Trustees, etc.,* 53 Ind. 326; *Petty* v. *Trustees, etc.,* 95 Ind. 278.

Section 2000, *supra,* reads thus: " Whoever, being over fourteen years of age, is found on the first day of the week, commonly called Sunday, rioting, hunting, fishing, quarrelling, at common labor, or engaged in his usual avocation (works of charity and necessity only excepted) shall be fined in any sum not more than ten nor less than one dollar."

In our opinion this statute does not condemn the transaction here under consideration, and we rest our conclusion upon two grounds:

*First.* The transaction to which the subscription relates was not in any sense a work of " common labor," within the meaning of the statute.

*Second.* What was done was to aid a work of charity.

Our conclusion is not in conflict with decided cases which hold that contracts which relate altogether to the everyday affairs of life fall within the inhibition contained in the statute, as being acts of " common labor." The phrase " common labor " can not be given an exact and accurate definition; this is impossible, in the very nature of things.

The most that the courts can do is to determine, as cases arise, whether or not the transaction, or act, involved in a given case falls within the legislative intention, as expressed in the statute.

One thing, however, may be safely assumed, and that is that it was not the legislative intention that the phrase

" common labor " should be restricted in its meaning to mere manual labor.

The execution of ordinary contracts, and the transactions to which they relate, may well be regarded as acts of " common labor," within the meaning of the statute.

Such transactions belong to the ordinary business affairs of life, and no doubt were as much in the legislative mind when the' statute was enacted as the work of the farmer in his field, or the mechanic in his shop, or the common laborer upon a public improvement.

But cases of the character of the one under consideration belong to a different class altogether. .The purpose, or end in view, is not financial or wordly gain, but to advance the cause of Christianity, and to elevate the moral standard of the particular community or locality. ` *Rapp* v. *Reehling,* 124 Ind. 36.

One who engages in a mere business transaction on Sunday, such as the execution of a conveyance to land, of a promissory note, or other contract, violates the statute in question, and is guilty of a misdemeanor, and subject to a criminal prosecution the same as if he had engaged in any other act of common labor; but whoever imagined that persons engaged in church collections, either as solicitors or contributors on Sunday, were under the condemnation of the statute ?

If, however, the contention of the appellee is to be adopted, then every collection made on the Sabbath day, in connection with religious services, is an act of *common labor*, and unlawful. And if collections, which are paid as the solicitors pass through the congregation, do not fall within the statute, neither do .contributions promised to be paid at a future time, because the circumstances and purposes under and for which they are made are in nowise different.

The statute in question must apply as well to cash collections as those made to be paid in the future ; for, as we have already intimated, it is a criminal statute, and recognizes no distinction between executed and executory contracts.

If the trustees of a religous society were prosecuted for a violation of the statute in making collections for the benefit of·their society on Sunday, it would be no justification that all persons solicited made cash payments.

Unless the appellants were liable to a criminal prosecution for what they did in the way of taking a collection at the time the appellee made his subscription, the subscription does not fall within the inhibition of the statute as an act òf common labor; and we do not think they were guilty of any offence for which they were subject to criminal prosecution.

That the subscription was made in aid of a charitable enterprise we think may also be successfully maintained.

The purpose for which it was taken falls within the definition placed upon the word " charity," by courts of last resort in other States, and of very high standing for legal learning. *Doyle* v. *Lynn,* 118 Mass. 195 ; *Allen* v. *Duffie,* 43 Mich. 1 ; *Dale* v. *Knepp,* 98 Pa. St. 389. See, also, the word " charity," and its definitions in Webster, Worcester, and the Century dictionaries.

The conclusion to which we have come overrules *Catlett* v. *Trustees, etc.,* 62 Ind. 365, which properly enough controlled the rulings of the trial court as to the question we have considered. We do not think that case sound on principle, and it is against the great weight of authority. See cases cited last above.

For the error indicated, this case must be reversed.

Judgment reversed, with costs.

Filed Jan. 28, 1891.