## Brown v. The Marion Commercial Club.

[No. 7,377. Filed March 15, 1912. Rehearing denied June 18, 1912.]

1. SUBSCRIPTIONS.—Nature.—Joint or Several Liability.—A subscription is several, where a default by one subscriber will not affect the liability of any other. p. 674.

2. CONTRACTS.—Inducement and Consideration for Contract.—Consideration.—Sufficiency.—While there is a difference between in-

ducement or motive to enter into a contract, and the consideration yielding for its support, yet, in the absence of fraud or mistake, the consideration regarded as such or fixed by the parties thereto will be deemed sufficient. p. 676.

3. CONTRACTS.—*Mutual Promises.*—*Consideration.*—Mutual promises, whereby there is a mutuality of engagement, are based on sufficient consideration. p. 676.

4. SUBSCRIPTIONS.—*Consideration.*—The consideration for a subscription contract may consist of a benefit to the promisor or of a detriment to the promisee. p. 676.

5. SUBSCRIPTIONS.—*Factory Bonus.*—*Consideration.*—*Revocation.*— A subscription to a fund, to provide bonuses for the location of additional factories in a city, is not revocable before bonuses are paid or agreed to be paid, on the theory that liability to pay does not attach until some liability has been assumed, or some expense incurred by the promisee, since the real consideration, where the object to be accomplished is of interest to all and is not likely to be attained except by combined performance, is the promise which others have made or will make by subscribing to the same object. p. 677.

6. SUBSCRIPTIONS.—*Actions.*—*Answer.*—*Evidence.*—*Admissibility.*— In an action against a subscriber to a factory bonus fund, where plaintiff is required to allege and prove its agreement to pay a bonus for the location of a factory, by reason of which defendant's subscription is due, evidence showing that items of indebtedness did not accrue to plaintiff because of any agreement to pay a bonus for the location of a factory, is admissible under the general denial. pp. 679, 683.

7. APPEAL.—*Review.*—*Harmless Error.*—*Sustaining Demurrer to Answer.*—Sustaining a demurrer to an answer pleading facts which may be proved under the general denial is not reversible error. p. 680.

8. SUBSCRIPTIONS.—*Factory Bonus.*—*Action.*—*Defense.*—It is no defense to an action on a subscription to a factory bonus fund, that factory owners, with whom agreements to pay bonuses had been entered into, had forfeited their contracts and moved their factories elsewhere, where the subscription matured by plaintiff's agreement to pay bonuses, and the form of the agreement was left to the parties making it, and the subscription provided that bonuses returned under forfeited agreements should be used in the location of other factories. p. 680.

9. SUBSCRIPTIONS.—*Factory Bonus.*—*Action.*—*Defense.*—In an action by a commercial club on a subscription to a factory bonus fund, the fact that bonus agreements were made with certain officers, directors and stockholders of the club or with corporations in which they were directly interested, is no defense, in the

absence of fraud in such agreements which entered into or in any manner influenced the subscription. pp. 681, 682.

10. SUBSCRIPTIONS.—*Misapplication of Funds.*—*Defense.*—Where a subscription becomes due, payment cannot be refused on the grounds that the funds will be misapplied, since if the money is not properly applied the subscriber has his remedy. p. 682.

11. SUBSCRIPTIONS.—*Limiting Time and Amount of Payment.*—*Defense.*—Where a subscription to a factory bonus fund provided that no more than fifty per cent of the subscription would become due in any one year, defendant, having failed for two years to pay any part of his subscription, cannot avoid the payment of any part of his subscription because of plaintiff's failure to enforce the payments as they became due. p. 683.

12. SUBSCRIPTIONS.—*Factory Bonus.*—*Liability of Subscriber for Expense Incurred.*—A subscription to a bonus fund for the location of factories does not render the subscriber liable for the payment of expense incurred in procuring factories to be located. p. 683.

13. APPEAL.—*Review.*—*Disposition of Cause.*—*Reversal.*—A cause will be reversed and a new trial ordered, where, on a careful consideration of the case as disclosed by the record, the court deems that justice will be best subserved thereby. p. 685.

From Grant Circuit Court; *Henry C. Fox,* Special Judge.

Action by The Marion Commercial Club against William A. Brown. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Condo & Browne,* for appellant.

*W. S. Marshall, W. H. Carroll, Miller, Shirley & Miller,* for appellee.

MYERS, J.—Appellee brought this action against appellant on the following written instrument:

"Whereas, The Marion Commercial Club of Marion, Indiana, realizing the necessity of locating manufacturing industries in said city, in order to continue its prosperity and build a larger city, is using its influence and its officers and members are putting forth great efforts to induce manufacturing industries to locate in and adjacent to the city of Marion, Indiana, and

Whereas, we, realizing that it is impossible to locate good substantial industries without giving to them bonuses or financial assistance, and further realizing that the benefit that will accrue to the business and

property interests in the city of Marion, Indiana, by the location of additional manufactures in and within the vicinity thereof,

We, whose names are signed hereto, do each for himself and herself hereby agree to pay to The Marion Commercial Club of Marion, Indiana, that portion of all amounts by it agreed to be paid to all manufacturing industries that it may succeed in locating in or in the vicinity of Marion, Indiana, within two years from the first day of April, 1905, set opposite our respective names, provided that said sum so donated shall not exceed $50,-000 in any one year, said sums payable as the said The Marion Commercial Club may designate, but never more than 25 per cent of the subsidy granted any one manufacturing concern to be payable in any period of thirty days, and in the event of the death of the subscriber or his or her removal from Marion, Indiana, the subscriptions made by him, her or them, shall be null and void from the date of death or removal.  It is hereby further agreed and understood by the subscribers hereto that if in the location of any manufacturing industry, any amount shall be by them repaid to said The Marion Commercial Club, that it shall have the right and is hereby empowered and directed to use the same in the location of any other manufacturing industry it may desire.

The sums so subscribed by us are payable without any relief from valuation or appraisement laws of the State of Indiana.

Witness our hands this 27th day of February, 1905,
Name
WILLIAM A. BROWN.                Per cent—$\frac{1}{2}$ ''

The complaint alleges that on and prior to February 27, 1905, appellee procured from appellant and other citizens of the city of Marion, subscriptions to a $100,000 factory fund; that said fund was donated for the purpose of locating manufacturing industries in said city; that by virtue of said subscription contracts, appellee, between February 6, 1906, and March 20, 1907, entered into certain contracts with certain manufacturers for the location of their respective industries in said city and vicinity, and agreed to pay to each of said manufacturers a certain per cent or amount as

a donation from said factory fund so raised by said subscriptions, which donations, together with $2,000 to appellee for expenses in locating said factories, aggregated the sum of $100,000; that it agreed to pay the several amounts stated; that appellant's subscription is due and wholly unpaid, and that appellant has been assessed for the purposes aforesaid the amount subscribed by him, and that notices of such assessment were duly given to appellant from time to time as the donations were made to manufacturing industries aforesaid.

Appellant answered in eight paragraphs. The first was a general denial. A demurrer was sustained to all the other paragraphs except the third, to which no demurrer was addressed. This paragraph proceeded on the theory of no consideration for the execution of the contract in suit.

The second paragraph shows that subsequent to the signing of said written subscription, and before appellee made or entered into any agreement whatever with either of the several owners of manufacturing industries mentioned in the complaint, and before it agreed to pay any sum of money whatever as a subsidy or otherwise to either or any of said owners for the location of their respective manufacturing industries, appellant revoked and withdrew his subscription and offer, and notified appellee of such revocation and withdrawal. This paragraph proceeds on the theory that nothing short of a contract between promisee and a third party to locate an additional manufacturing enterprise in or near the city of Marion will suffice as a consideration for appellant's subscription.

We agree with appellant that the subscription relied on by appellee is several, not because the particular paper was signed by him alone, but because his default would

1. not affect the liability of any other subscriber, nor would the failure of any other subscriber to pay increase or diminish appellant's liability. *Landwerlen* v.

*Wheeler* (1886), 106 Ind. 523, 5 N. E. 888; *Davis & Rankin Bldg., etc., Co.* v. *Hillsboro Creamery Co.* (1894), 10 Ind. App. 42, 37 N. E. 549; *Davis & Rankin Bldg., etc., Co.* v. *Booth* (1894), 10 Ind. App. 364, 37 N. E. 818; *Price* v. *Grand Rapids, etc., R. Co.* (1862), 18 Ind. 137; *Davis & Rankin Bldg., etc., Co.* v. *Barber* (1892), 51 Fed. 148; *Davis* v. *Belford* (1888), 70 Mich. 120, 37 N. W. 919; *Los Angeles Nat. Bank* v. *Vance* (1908), 9 Cal. App. 57, 98 Pac. 58.

The wording of the subscription clearly contemplates that it is one of a number of like import, signed by others subscribing to the common fund. Its language is not ambiguous, uncertain nor indefinite when considered in the light of the inducement which influenced it, the circumstances under which it was made, the situation of the parties and the nature of their business. Hence the answer to the present question is largely dependent on legal principles applicable to that class of promises to which the one under consideration belongs.

It is said that before any agreements were made with the various owners of manufacturing industries named in the complaint, appellant gave appellee notice that he would not pay the amount subscribed by him, and that he revoked his subscription. Appellant's right so to do is put on the ground that the alleged contract lacked mutuality, and that it was a mere gratuitous promise at the time he sought to revoke it. In support of this contention he cites a large number of cases, among them *Twenty-third Street Baptist Church* v. *Cornell* (1890), 117 N. Y. 601, 23 N. E. 177, 6 L. R. A. 807; *Presbyterian Church of Albany* v. *Cooper* (1889), 112 N. Y. 517, 20 N. E. 352, 3 L. R. A. 468, 8 Am. St. 767; *Grand Lodge, etc.,* v. *Franham* (1886), 70 Cal. 158, 11 Pac. 592; *Pratt* v. *Trustees, etc.* (1879), 93 Ill. 475, 34 Am. Rep. 187; *Wardwell* v. *Williams* (1886), 62 Mich. 50, 28 N. W. 796, 4 Am. St. 814; *Solomon* v. *Penoyar* (1891), 89 Mich. 11, 50 N. W. 644; *Cottage Street M. E. Church* v.

*Kendall* (1877), 121 Mass. 528, 23 Am. Rep. 286; *Doherty* v. *Arkansas, etc., R. Co.* (1905), 142 Fed. 104, 73 C. C. A. 328.

It is claimed that the recitals in the contract which precede appellant's covenant to pay, were an inducement or motive, and not a consideration for its execution; that he agreed to pay in case appellee bound itself to pay, and therefore the consideration for his promise was the liability of appellee on its agreement with manufacturers.

While there is a difference between inducement or motive to enter into a contract, and the consideration yielding for its support (*Clark* v. *Continental Improve. Co.* [1877], 57 Ind. 135; *Standley* v. *Northwestern, etc., Ins. Co.* [1884], 95 Ind. 254; *Warey* v. *Forst* [1885], 102 Ind. 205, 26 N. E. 87), yet in the absence of fraud or mistake the consideration regarded as such or fixed by the parties thereto will be deemed sufficient. *McNutt* v. *McNutt* (1889), 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372; *Wolford* v. *Powers* (1882), 85 Ind. 294, 44 Am. Rep. 16. As said in the case last cited: "It is the general rule that where there is no fraud, and a party gets all the consideration he contracts for, the contract will be upheld." Mutual promises, whereby there is mutuality of engagement, are not without a sufficient consideration. *Davis* v. *Calloway* (1868), 30 Ind. 112, 95 Am. Dec. 671; *City of Lyons* v. *Kelley* (1909), 6 Ga. App. 367, 65 S. E. 44; *Curry* v. *Kentucky Western R. Co.* (1904), 25 Ky. Law 1372, 78 S. W. 435; *Shelby County R. Co.* v. *Crow* (1909), 137 Mo. App. 461, 119 S. W. 435. These observations apply to contracts generally, but it has not been infrequently said by courts, in passing on subscription contracts, that "a consideration may consist of a benefit to the promisor or of a detriment to the promisee". *Richelieu Hotel Co.* v. *International Military Encampment Co.* (1892), 140 Ill. 248, 264, 29 N. E. 1044, 33 Am. St. 234.

But looking specially to the contention of appellant, a fair

interpretation of the subscription before us evidently contemplates the location of additional manufacturing
5.  industries by appellee, on such terms in the way of bonuses, payable out of the fund subscribed, as might be agreed on, providing that such agreement is not inconsistent with the authority conferred by the subscriber. The covenant to pay had the effect of fixing the time and amount to be paid by the subscriber, that is to say, the execution of a contract for the location of a factory matured the subscription in the amount fixed by the per cent agreed to be paid as a bonus. The enterprise was in the interest of the general public in that vicinity, and the subscription voluntary. It was made payable, and formally delivered to a legal entity engaged solely in promoting the general commercial prosperity of the city of which the subscriber is a resident. The payee was authorized to receive the subscription, collect the money thus subscribed, and to make contracts for its disposition, limited only by the conditions imposed by the subscriber. This subscription is not ruled by the doctrine applicable to rewards for the arrest of criminals, and other similar matters, made by proclamation or by newspaper advertisement, which might be withdrawn before performance; for in such cases nothing short of performance, which is open to any one, will amount to an acceptance, while in this case appellee alone was authorized to accept it. Agreements between appellee and third parties, whereby bonuses to the full amount of the fund subscribed were to be paid for the location of additional factories pursuant to the conditions of the subscription, would undoubtedly be regarded as full performance, and unquestionably an acceptance. But here there was not full performance before notice of revocation, consequently the question for decision is governed in many respects by legal principles controlling voluntary subscriptions to specific charitable, religious or other such purposes, where complete performance is not required to constitute an acceptance. In the last class of cases the rule is, that while

the promise may have been gratuitous, and not enforcible for want of mutuality, yet the assumption of any liability, or the incurring of any expense by the promisee on the faith of such promise, before notice of withdrawal, will furnish a sufficient consideration to bind the promisor. 1 Parsons, Contracts *453; *Miller* v. *Ballard* (1868), 46 Ill. 377; *Cottage Street M. E. Church* v. *Kendall, supra; Des Moines University* v. *Livingston* (1881), 57 Iowa 307, 10 N. W. 738, 42 Am. Rep. 42; *McCabe* v. *O'Connor* (1886), 69 Iowa 134, 28 N. W. 573; *Johnson* v. *Otterbein University* (1885), 41 Ohio St. 527; *Trustees, etc.,* v. *Fleming* (1874), 73 Ky. 234; *Richelieu Hotel Co.* v. *Military Encampment Co., supra; Rogers* v. *Galloway Female College* (1898), 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636; *Northwestern Conference, etc.,* v. *Myers* (1871), 36 Ind. 375; *Trustees, etc.,* v. *Garvey* (1870), 53 Ill. 401, 5 Am. Rep. 51; 1 Page, Contracts §298.

The complaint shows that appellee did enter into agreements whereby additional factories were located in the city of Marion, and on the faith of appellant's subscription it agreed to pay certain bonuses. The answer avers a withdrawal by appellant of his subscription before said contracts were entered into, or any money paid to manufacturers, but it does not appear that this was done before the subscription was acted on in such a manner as to raise a consideration for his promise.

The authorities are not harmonious "concerning the grounds, as well as the nature and extent of the liability of subscribers in cases like this." *Hodges* v. *Nalty* (1902), 113 Wis. 567, 89 N. W. 535; *Higert* v. *Trustees, etc.* (1876), 53 Ind. 326. Our conclusion that this answer is insufficient is based on what we regard as the weight of authority, and it is supported by the decisions in this State, which seem to be founded on the principle that where there are a number of subscribers to a common fund for the accomplishment of an object of interest to all, and not likely to be attained except by combined performance, the real consideration for the sub-

scriber's promise is the promise which others have already made or will make by subscribing to the same object. *Peirce* v. *Ruley* (1854), 5 Ind. 69; *Higert* v. *Trustees, etc., supra; Petty* v. *Trustees, etc.* (1883), 95 Ind. 278; *Bryan* v. *Watson* (1891), 127 Ind. 42, 26 N. E. 666, 11 L. R. A. 63.

The fourth paragraph is a partial answer addressed to certain items in the complaint alleged to be appellant's percentage of bonuses or donations appellee agreed to

6.  pay manufacturers whose factories, according to the averments of this paragraph, are not additional to those located in the city of Marion at the time of signing said written subscription, but were manufacturing industries then located and established in that city. Appellee procured from appellant a subscription to what was known as a "factory fund", which appellee was to use in the business in which it was then engaged, namely, inducing manufacturing industries to locate in or within the vicinity of Marion. By the terms of the subscription, the amounts subscribed became due and payable to appellee in payments. The amount of each payment, and the time when due, was fixed by the bonus agreements. Any evidence which tended to show that the items of indebtedness in question did not accrue to appellee because of agreements to pay bonuses for the location of factories was admissible under the general denial, on the theory that it would tend to reduce the amount of appellee's recovery. *Gwinnup* v. *Shies* (1903), 161 Ind. 500, 69 N. E. 158; *Indiana Trust Co.* v. *Finitzer* (1903), 160 Ind. 647, 67 N. E. 520; *Blizzard* v. *Applegate* (1878), 61 Ind. 368; 1 Thornton, Civil Code 528, note 2. The burden was on appellee to allege and prove its agreement to pay a bonus for the location of a manufacturing industry, on account of which, and by reason of appellant's subscription agreement, the payments demanded were due from him, and unpaid. "Under the general denial, a defendant may introduce any proof that will meet what the plaintiff is bound to prove in order to recover." *Kirshbaum*

v. *Hanover Fire Ins. Co.* (1897), 16 Ind. App. 606,
7.    45 N. E. 1113.  Sustaining the demurrer to the fourth
      paragraph of answer was not reversible error.  *Jeffer-*
*sonville Water Supply Co. v. Riter* (1897), 146 Ind. 521,
45 N. E. 697; *Cheney v. Unroe* (1906), 166 Ind. 550, 77
N. E. 1041, 117 Am. St. 391.

The fifth paragraph is a partial answer addressed to cer-
tain items in the complaint aggregating $50, and agreed to
      be paid by appellee to designated parties as bonuses
8.    for the location of certain factories in the city of
      Marion.  This answer contained a copy of the con-
tract between appellee and such factory owners, whereby it
appears that the former agreed to pay the latter the pro-
ceeds it was able to collect from stated per cent assessments
against the subscribers to its $100,000 factory fund.  It is
also averred that since said agreements were entered into,
said factory owners have forfeited their contracts with ap-
pellee, and removed their factories from Marion and its
vicinity.

This answer proceeds on the theory that in order to hold
appellant liable on his subscription, appellee was bound to
allege and prove an unqualified agreement on its part to pay
bonuses, before it could compel payment by appellant.
There is no merit in this contention.  Appellee contracted
with reference to appellant's subscription.  Its agreement
to pay bonuses for the location of factories matured the sub-
scription to the amount of the per cent required to pay ap-
pellant's portion of such bonuses, and the form of such
agreement was left to the parties making it.

The subscribers, under a provision in the subscription
contract, released to appellee all claims to repayments made
by manufacturers, and expressly authorized it to use such
repayments in the location of other manufacturing indus-
tries.  There is no provision for the return of a payment to
the subscriber, so that if appellant had paid when due his
portion of the forfeited bonuses, the fact of forfeiture would

give him no right to claim its return. Nor should the fact alone that he failed to pay give him a better standing than he would have had by complying with his agreement. His contract was not with the manufacturer, but with appellee. His defense is based on the former's default of a contract to which he was not a party, nor in privity with either of the contracting parties in that contract, and cannot be sustained. *Lewis* v. *Brookdale Land Co.* (1894), 124 Mo. 672, 28 S. W. 324.

The seventh paragraph is also a partial answer addressed to $445 of the recovery sought in this action. By this paragraph it is averred that $435 was donated by appellee to manufacturers named in the complaint, whose stockholders, officers and directors were, at the time each donation was made, also stockholders, officers and directors of appellee, and that appellant was assessed $10 to pay the expenses of appellee in locating factories.

It is the theory of this paragraph that appellee ought not to recover said $435 so assessed against and demanded of appellant for the reason that, if collected, it will be distributed and paid to certain named manufacturers, who are not only stockholders, officers and directors, respectively, of appellee, but also in some instances officers, directors and stockholders in corporations which are to receive part of said fund; that so to distribute and pay out said fund would be in violation of the trust reposed in appellee to collect, handle and donate the same as trust funds; that its donation and distribution so as to inure to the special benefit of appellee's stockholders, directors and officers would amount to a fraud, and render invalid the bonuses so agreed to be paid.

If the subscribers receive the consideration for which they contract, in this respect, that is all they can demand. There is no claim that the alleged fraud entered into, or in any manner influenced appellant's subscription, nor that the fund thus subscribed will be misappropriated or used for any other purpose than as stipulated in the subscription.

The fact alone, that bonus agreements were made with certain officers, directors and stockholders of appellee, or with corporations in the management of which they were directly interested, does not necessarily render such agreements void. *Hill* v. *Nisbet* (1885), 100 Ind. 338. If appellee did agree to pay bonuses for the location of factories, appellant will not be heard to say he will not pay because the money will be misapplied. "The subscription must be paid when due, and if an attempt is afterwards made to use the money in a way different from that stated in the subscription, the subscriber has his remedy." *Rothenberger* v. *Glick* (1899), 22 Ind. App. 288, 52 N. E. 811. See, also, *Cravens* v. *Eagle Cotton Mills Co.* (1889), 120 Ind. 6, 14, 21 N. E. 981, 16 Am. St. 298.

We are not impressed with the thought that this is a case where the relation of trustee and *cestui que trust* exists. Appellant's agreement was to pay a certain specified amount of money on certain stipulated conditions. Appellee's compliance with those conditions entitled it to enforce payment of the subscription. The relation of appellant and appellee is not the same as if a fund like the one here in question was subscribed, and someone appointed to receive and disburse it as directed by the instrument of his appointment, and where there is a duty devolving on such appointee to report his doings to the persons subscribing to the fund. In this case it does not appear that the officers and directors in charge of the finances and other affairs of appellee were under any obligation to anyone except the stockholders and members of the corporation which they represented. Appellee was engaged in locating factories, and was proposing to offer bonuses as an inducement for their location at the city of Marion. In order that it might carry out its purpose, it solicited and obtained subscriptions to what was known as a factory fund. The initiative in raising this fund was not taken by the subscribers, nor does it appear that the fund was raised and placed in

appellee's hands for disposition. The subscription was merely a promise to pay when appellee needed it to pay bonuses. With this view of the relation existing between the parties to this controversy it would seem that appellee was not authorized to collect from the subscribers anything for expenses in locating factories. But as to the item of 6. $10 mentioned, the demurrer was properly sustained to the paragraph, for the reasons stated in passing on the sufficiency of the fourth paragraph.

The eighth paragraph is a partial answer addressed to forty per cent of the recovery sought in this case, and avers that appellee, during a period of one year, entered 11. into contracts with manufacturers whereby it agreed to pay bonuses out of said fund to manufacturers aggregating $90,000, and attempted to assess against appellant his portion of said donations, in violation of a condition in the contract wherein no more than $50,000 of said fund was to be appropriated in any one year for the purposes therein stated.

This answer cannot be sustained, for the reason that at the time this action was begun, more than two years from April 1, 1905, had expired. That provision in the contract, brought in question by this paragraph, was intended by the subscribers to limit the amount of their payments during any given year. Whatever action appellee might take in the way of agreements to pay bonuses, no more than fifty per cent of the subscriber's subscription would be due in any one year. Two years having elapsed, and appellant having failed to pay any part of his subscription, he cannot now be heard to say that the failure of appellee to enforce payment as his subscription became due, will release him from any part of his obligation.

It is next insisted that the special finding of facts does not sustain the conclusions of law. The findings show 12. that through the activity of appellee a fund of $100,-000 was subscribed for the purpose of locating man-

ufacturing enterprises in the city of Marion and in the vicinity thereof; that said subscriptions were in writing, one of which was executed by appellant for $500, and is the foundation of this action; that appellee, in furtherance of said movement, entered into contracts with various factory owners for the location of factories in the city of Marion, whereby it agreed to pay to such owners the proceeds from certain per cent assessments on the subscribers to said fund; that the subscribers, including appellant, were assessed in proportion to the several amounts so agreed to be paid, aggregating $98,000, and $2,000 for the purpose of meeting expenses incurred by appellee in locating said factories. For this latter purpose appellant was assessed $10, and for the purpose of paying bonuses for the location of factories, $490. On the facts found, the court concluded that the law was with appellee, and that it was entitled to recover from appellant $500 with interest thereon, etc.

From what we have said in disposing of other questions in this case, it is evident that we cannot agree with the trial court in its conclusions of law. It is quite clear that our disagreement with the conclusions reached by the trial court comes from a different view of the subscription contract, and the relation which the parties thereto bear to each other. As we see the contract, it was enforcible against the subscribers only as the assessments were made for the purpose of paying bonuses for the location of factories. The findings show that $2,000 of the fund subscribed was not for this purpose at all, and that appellant's portion of that amount was $10, which, according to the conclusions of law, he should pay. This conclusion was necessarily founded on the theory that appellee acted in the capacity of a trustee for the subscribers, and as such was authorized to charge them with all necessary expenses incurred, as for administering a trust. Appellee made its own proposition, and while it was not compelled to carry it out, yet if it did so, it must be on the terms and conditions provided in its contract

with the subscribers. It, no more than any one else, will be allowed to induce parties to engage to pay money for one purpose, and then require them to pay it for another, because without such payment performance of the contract will be a hardship on it. *Rothenberger* v. *Glick, supra; Board, etc.,* v. *South Bend, etc., St. R. Co.* (1889), 118 Ind. 68, 20 N. E. 499; *Taylor* v. *Fletcher* (1850), 15 Ind. 80; *Moore* v. *Campbell* (1887), 111 Ind. 328, 12 N. E. 495.

The conclusions of law were erroneous *(Helms* v. *Wagner* [1885], 102 Ind. 385, 390, 1 N. E. 730), and as the judgment was for $570, an amount not authorized by the ultimate facts found, this error cannot be considered harmless. After a careful consideration of this case as disclosed by the record, we have concluded that justice will be best subserved by a new trial.

Judgment reversed, with instructions to grant a new trial, and for further proceedings not inconsistent with this opinion.

Felt, C. J., Hottel, Lairy, Ibach and Adams, JJ., concur.

Note.—Reported in 97 N. E. 958. See, also, under (1) 37 Cyc. 502; (2) 9 Cyc. 365; (3) 9 Cyc. 323; (4) 37 Cyc. 491; (5) 37 Cyc. 492; (6) 37 Cyc. 503; (7) 31 Cyc. 358; (8) 37 Cyc. 500; (10) 503-New, Cyc. Ann. 3674; (12) 37 Cyc. 495; (13) 3 Cyc. 454. As to the necessity and sufficiency of an acceptance to make a subscription enforceable, see 17 Ann. Cas. 1076. As to the liability of persons subscribing for a public object, see 13 Am. Dec. 458; 79 Am. Dec. 510; 82 Am. Dec. 121. As to the liability on subscriptions to corporate stock, see 136 Am. St. 737.