TRACKWELL, ADMINISTRATOR, v. IRVIN.

[No. 9,448. Filed April 17, 1917. Rehearing denied June 26, 1917. Transfer denied November 20, 1917.]

1. APPEAL.—*Theory of Case.—Statute.*—Although §9718 Burns 1914, §6052 R. S. 1881, relating to the settlement of a partnership upon the death of a partner, contemplates that, when more than one partner survives, all should join in the report, where, on the trial of exceptions to a report filed by one or two surviving partners, the trial court and the parties treated the report as in substantial compliance with the statute, the court on appeal will so treat it. p. 6.

2. CONTRACTS.—*Consideration.—Requisites.*—To constitute a valid consideration there must be some benefit accruing to the promisor, or a loss or disadvantage sustained by the promisee. p. 12.

3. CONTRACTS.—*Validity.—Consideration.—Sufficiency.*—Mere inadequacy of consideration does not invalidate a contract, unless it be so gross as to raise a presumption of fraud, and where the agreed consideration is of an indeterminate value, its sufficiency will not be inquired into by the courts. p. 12.

4. APPEAL.—*Harmless Error.—Embodying Conclusion of Law in Finding of Fact.*—Treating a conclusion of law as a finding of fact is harmless, where the specific facts found warrant such a conclusion, since the court would be authorized to embody it in the conclusions of law. p. 12.

5. PARTNERSHIP.—*Partnership Agreement.—Transfer of Property.—Consideration.—Sufficiency.*—A stipulation in a partnership agreement, containing many mutual promises and obligations, that in consideration of one partner receiving during her lifetime half of the net profits of the business and in consideration of the use by the partnership of the separate property of another partner in conducting the business, and for past and other considerations, such partner conveyed to the other partners all her interest in the personal property of the partnership at the time of her death, is based on some consideration, and, since the consideration is indeterminate in value, the court will not inquire into its sufficiency, and the transfer is valid though the delivery of the property is postponed until the death of the transferor. p. 13.

From Shelby Circuit Court; *Alonzo Blair,* Judge.

Exceptions by Thomas E. Trackwell, administrator of the estate of Samantha J. Shoup, deceased, to the

report filed by Maggie M. Irvin, as surviving partner of the firm of Shoup and Heck. From a finding approving the report and dismissing the exceptions, the administrator appeals. *Affirmed.*

*E. W. McDaniel, Connor D. Ross* and *Wray & Campbell,* for appellant.

*Isaac Carter* and *Hord & Adams,* for appellee.

IBACH, P. J.—For some years prior to her death Samantha J. Shoup was engaged in the business of propagating and selling goldfish with Maggie M. Irvin (formerly Maggie M. Heck) and Chester Heck under the firm name of Shoup and Heck.

Appellee, as surviving partner, filed her final report, ratified and consented to by her surviving copartner, of the partnership business, in 1. which she charged herself with $593.58 and credited herself with the same amount. The statute evidently contemplates, where there are more than one surviving partner, that they join in the report. §9718 Burns 1914, §6052 R. S. 1881. But inasmuch as the trial court and the parties have treated the report as a substantial compliance with the statute and no question made below, we shall so treat it.

Appellant, as administrator of the estate of Samantha J. Shoup, the deceased partner, filed exceptions to such report wherein the claim is made that there was some personal property belonging to the partnership which had not been administered upon by the surviving partner, while the surviving partner took the position, as shown by her report, that all of such property was her individual property and constituted no part of the estate of her former copartner.

The special finding of facts is as follows: (1) Charles Heck died March 5, 1910. At the time of his

death he was, and for a long time before had been, in
partnership with Samantha J. Shoup under the firm
name of Shoup and Heck, and with her engaged as
equal partners in the business of propagating and
selling goldfish. In carrying on said business, land
and much water was used. She owned a life estate
in one-half of about fourteen acres of ground that
was devoted to that purpose, and he owned, either in
his own right or with his wife, the balance of the land
used in said business, which was then ten acres. (2)
Charles Heck left as his sole heirs at law his widow,
Maggie Heck, and one son, Chester Heck. In a few
days after his death an agreement and contract was
made between Maggie Heck and said Samantha J.
Shoup by which it was agreed between them that said
partnership should be carried on as it had been dur-
ing the lifetime of said Charles Heck, said Maggie
Heck and Chester Heck owning and representing the
interest owned and held by said Charles Heck, that
said Maggie Heck should take charge of the business,
as she had done, and receive for her services the same
compensation that he received, and that Susie Brown
should continue to be the bookkeeper for the partner-
ship. After this agreement was made, said business
was conducted under the firm name of the said Shoup
and Heck by said Samantha J. Shoup and the said
Maggie Heck and Chester Heck, and said Maggie
Heck had charge of said business, gave it her time
and attention, and said Susie Brown continued to be
the bookkeeper of said firm; that said Charles Heck
received for his services in caring for said business
the sum of $100 per month and occupied a residence
on lands owned by said partnership. (3) No part of
the water used in carrying on said business came
from the land in which Samantha J. Shoup had any

interest. At and before the death of said Charles
Heck, part of it came from land owned by him, or by
him and his said wife, and a very large part of it came
from land owned by others, which land was near to or
adjacent to the land owned by him, or by him and his
said wife. The most of said water came from springs
on the land owned by one Weintraut. At the time of
said Charles Heck's death, there was a controversy
between said firm of Shoup and Heck on the one hand
and of said Weintraut on the other as to the rights of
the parties in the water that came from the land
owned by Weintraut, and their rights were in litiga-
tion and so continued until October or November of
that year. The latter diverted the flow of water upon
his land very largely or entirely so that it did not flow
onto the land owned by said partnership or by said
Hecks, and by reason thereof the business of said
partnership was greatly injured and its profitable
continuance seriously threatened, interfered with
and obstructed. Afterwards, in October or Novem-
ber, 1910, said Maggie Heck and said Chester Heck
purchased from said Weintraut ten acres of land on
which said springs were, and secured said water
supply, and the water from said springs thereafter
was ample for and was used in carrying on the busi-
ness of said Shoup and Heck, and said Maggie Heck
became the owner of the three-fourths part of said
Weintraut land and said Chester Heck of the one-
fourth part of the same; and the litigation over said
water rights was then terminated.

Many of the facts so found appear in the written
contract, and the court further finds that the parties
to the contract desired to use the ten acres purchased
from Weintraut in connection with the other real
estate in carrying on said business, and this agree-

ment was also incorporated in the contract which was to continue until the death of said Samantha J. Shoup, and in the event that either of the other parties should die prior to her death, the survivor. should continue the business until the death of said Samantha J. Shoup, and such survivor should have all the rights and benefits under the contract given to both Maggie Heck and said Chester Heck; that the taxes upon all the real estate and all the partnership property used and owned in connection with said business and all expense of operating the business should be paid out of the gross proceeds of the same, and the losses, if any, should be so paid, and if the losses should be so great that the proceeds would not pay them, one-half of the residue should be furnished by said Samantha J. Shoup and the other half by said Maggie Heck and said Chester Heck in equal proportions; that in consideration of said Maggie Heck furnishing to said partnership her real estate and interests therein in excess of the real estate owned by the other parties, she should be paid annually the sum of $500 in cash which was to be paid out of the gross proceeds as expenses of the operation of the business, and if there were not sufficient gross proceeds to pay said $500, said Shoup should pay to said Maggie Heck annually one-half of said amount and said Chester Heck the one-fourth thereof; that said Maggie Heck should be paid, as compensation for her supervision and management of the business, the sum of $100 per month as a part of the operating expenses of the business; that said Samantha J. Shoup should receive one-half of the net profits of said firm and the said Maggie Heck and the said Chester Heck should each receive the one-fourth part of the net profits of the same; that the said Samantha J.

Shoup should, and did, purchase from said Maggie
Heck and Chester Heck the one-half interest in 55,000
ornamental fish, purchased by them from Weintraut
and for the same should pay the sum of $1,650 and
that said fish including the other half so retained by
the Hecks should become and be a part of the partner-
ship property of all the parties to the contract and
should be managed by the firm and disposed of as
such other partnership property; that in considera-
tion of the terms and conditions of said agreement,
and for past and other considerations, and in con-
sideration of the said Samantha J. Shoup receiving
during the residue of her lifetime one-half of the net
profits of said business, and in consideration of the
said Maggie M. Heck and Chester Heck owning exclu-
sively the springs and water supply necessary to the
operation of said business of which by the terms of
this agreement the said Samantha J. Shoup should
receive one-half of the benefits, she conveyed unto the
said Maggie M. Heck all the interest which she, the
said Samantha J. Shoup, had and owned in all of the
firm property and assets used and had at the time of
her death in connection with said business, and she,
the said Samantha J. Shoup, also agreed that in con-
sideration of the considerations heretofore named,
the full title to all of her interest in all of the prop-
erty of said firm at her death should pass to the said
Maggie M. Heck without any other conveyance
thereof under this agreement, and that all such prop-
erty should be excluded from the estate of said
Samantha J. Shoup and should constitute no part of
the assets thereof at her death; that in the event that
the said Maggie M. Heck should not be living at the
death of said Samantha J. Shoup, then it was agreed

by all of the parties to said contract that at the death of said Samantha J. Shoup her interest in and title to all of said firm property should become the property of the said Chester Heck. (4) Finds that the partnership business was carried on under the contract until the death of said Shoup, December 3, 1913. (5) Samantha J. Shoup and her husband, William Shoup, were the parents of no children, and appellee had lived with the Shoups from the time she was four years of age until her marriage to Charles Heck, and decedent loved her as a daughter. (7) There was a valuable, sufficient, and adequate consideration for the execution of said written contract. (10) All money and property of said partnership during the time of the existence of said contract has been accounted for by said surviving partner in accordance therewith, and said Samantha J. Shoup and her estate have received the full one-half of the same, except the portion thereof which was necessary to expend in carrying on said business, and that said final report and each item and statement thereof is correct. (11) After the death of Charles Heck said Maggie Heck remarried, and her name is Maggie M. Irvin.

Upon the facts thus found the court concludes as a matter of law that the law is with the appellee, and that her report should be approved, and that the appellant's exceptions thereto be disallowed.

An exception to each of said conclusions of law and their assignment here present the only errors relied on for reversal. Appellant very earnestly contends that there was no valuable consideration for the transfer of the personal property of his decedent.

To constitute a valid consideration there must be

some benefit accruing to the promisor, or a loss or disadvantage sustained by the promisee.

2. *Starr* v. *Earle* (1873), 43 Ind. 478; *Judd* v. *Martin* (1884), 97 Ind. 173; *Pitcher* v. *Dove* (1885), 99 Ind. 175; *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 96 N. E. 196; *Brown* v. *Marion Commercial Club* (1912), 50 Ind. App. 670, 97 N. E. 958.

Mere inadequacy of consideration does not invalidate a contract, unless it be so gross as to raise a presumption of fraud, and where the consideration agreed on by the parties is of an indeterminate value, its sufficiency will not be inquired into by the courts. *Brown* v. *Budd* (1850), 2 Ind. 442; *Schnell* v. *Nell* (1861), 17 Ind. 29, 79 Am. Dec. 453; *Chicago, etc., R. Co.* v. *Derkes* (1885), 103 Ind. 520, 3 N. E. 239; *Vigo Agrl. Society* v. *Brumfiel* (1885), 102 Ind. 146, 1 N. E. 382, 52 Am. Rep. 657; *Price, Admr.,* v. *Jones* (1886), 105 Ind. 543, 5 N. E. 683, 55 Am. Rep. 230; *First Nat. Bank* v. *Farmers, etc., Bank* (1908), 171 Ind. 323, 86 N. E. 417.

3. The court by its conclusions of law in favor of appellee necessarily found that there was a sufficient consideration to uphold the transfer. In its seventh finding the court expressly finds that there was a sufficient consideration. It is objected, however, that such finding is a conclusion of law and not a finding of fact. If it was a conclusion of law it has no place in the finding of facts; but, if the specific facts found warrant such conclusion, its consideration would be harmless, as the court would be authorized to embody it expressly in the conclusions of law, as it did impliedly in this case. The question then is, Was such conclusion warranted by the specific facts found?

The court found that the decedent entered into a partnership agreement with appellee and her son, and sets out a copy of such agreement in its special finding. Such agreement contains mutual promises and obligations, and shows that the parties thereto have combined capital and property for the purpose of propagating and selling ornamental goldfish for profit. The agreement expressly states that:

5.

"In consideration of the terms and conditions of this agreement and for past and other considerations and in consideration of the 'decedent' receiving during the residue of her lifetime the net one-half of the proceeds of said business and in consideration that the said Maggie M. Heck and Chester C. Heck own exclusively the springs and water supply necessary to the operation of the said business * * * she hereby conveys," etc.

The question of consideration was the principal issue raised by the objections filed to the report of the surviving partner, and the court finds outside the contract that decedent had for a long time been in partnership with Charles Heck, who died March 5, 1910. They were equal partners in the business under the name of Shoup and Heck. In carrying on such business much water was used. She owned a life estate in certain ground that was devoted to such business, and he owned or had a joint interest in the balance of the land. No part of the water used came from decedent's land. At the time of his death most of the water came from the Weintraut land, and such water rights were in controversy between the firm of Shoup and Heck and Weintraut. The latter had diverted the flow of the water upon his land and greatly injured and threatened a profitable continuance of their business. Appellee and her son pur-

chased ten acres of land on which the springs were located of Weintraut, and the litigation was terminated. In the agreement of copartnership between decedent and appellee and her son the ten acres of land purchased were to be used in the business. After the execution of the written contract of partnership the business was carried on in accordance with the terms thereof until the death of decedent. Neither decedent nor her husband was the parent of any children, and they took appellee into their home when she was about four years old, and she remained there practically all the time until she was married.

It may be reasonably inferred from the facts found that the real property owned or controlled by the parties individually could not be successfully used in a divided state for carrying on such business. Appellee and her son owned the exclusive water supply which was necessary to carry on the business, and it may be reasonably inferred that they could have carried on the business in a limited way alone.

The partnership was to continue, and did continue, until the death of the decedent. While it may be true that decedent was entitled to one-half of the net profits as a partner, yet the partnership arrangement which permitted her to continue a business, with which she was familiar, under the same name and organization was an additional benefit reasonably to be inferred from the facts found.

The value of the mutual promises, the combining of their properties, and the practical assurance of a livelihood to the decedent during the remainder of her life would be difficult to ascertain. We are satisfied that there was some consideration for the transfer, and it being indeterminate in value, this court will not inquire into its sufficiency.

Appellant concedes the law to be that, where a transfer of property is upon a valuable consideration, the contract is a valid enforceable one, although the delivery of the property is postponed until the death of the vendor.

Judgment affirmed.

NOTE.—Reported in 115 N. E. 807.